675 F.2d 516
 25 Wage & Hour Cas. (BN 524, 93 Lab.Cas. P 34,174
 Raymond J. DONOVAN, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellant-Cross-Appellee,
v.
BURGER KING CORPORATION, Defendant-Appellee-Cross-Appellant.
 Nos. 199, 200, Dockets 81-6100, 81-6110.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 11, 1982.
Decided April 2, 1982.
 
 Barbara E. Kahl, Atty., U. S. Dept. of Labor, Washington, D. C. (T. Timothy Ryan, Jr., Sol. of Labor, Beate Bloch, Associate Sol., Mary-Helen Mautner, Kerry L. Adams, Attys., Dept. of Labor, Washington, D. C., on the brief), for plaintiff-appellant-cross-appellee, Raymond J. Donovan.
 Martin D. Heyert, New York City (Paul L. Bressan, Kelley Drye & Warren, New York City, on the brief), for defendant-appellee-cross-appellant, Burger King Corp.
 Thomas W. Power, Washington, D. C. (Robert D. McDonald, Power & McDonald, Washington, D. C., on the brief), for amicus curiae Food Service and Lodging Institute, in support of defendant-appellee-cross-appellant, Burger King Corp.
 Before OAKES, NEWMAN, and WINTER, Circuit Judges.
 RALPH K. WINTER, Jr., Circuit Judge:
 
 
 1
 This case involves cross-appeals from a judgment entered by the District Court for the Eastern District of New York.
 
 
 2
 The plaintiff Secretary of Labor brought this action under 28 U.S.C. § 217 alleging defendant Burger King's failure to pay overtime compensation to certain employees and to keep related records as required by the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 207, 211(c), 215(a)(2) and (a)(5) (1976). Burger King raised as an affirmative defense a claim that the employees, designated Assistant Managers, are "bona fide executive" employees under 29 U.S.C. § 213(a)(1) and exempt from both overtime and recordkeeping requirements.
 
 
 3
 Burger King operates a chain of fast food restaurants, which employ hourly employees, one salaried Manager and two salaried Assistant Managers. There are substantial periods of time during which an Assistant Manager is the sole supervisor in the restaurant. Among the duties performed by Assistant Managers are assigning hourly employees to particular tasks and monitoring their performance; determining the quantity of food to be prepared; ordering supplies and maintaining sufficient inventory; dealing with customer complaints; and auditing cash receipts. The Assistant Managers also spend time performing the same work as hourly employees, such as preparation and service of food. To assist the Managers and the Assistant Managers in the running of the restaurant, Burger King has prepared a "Manual of Operating Data." The Manual prescribes and explains standardized practices relating to the operation of the restaurant.
 
 
 4
 After a court trial, Judge Sifton held that Assistant Managers earning less than $250 per week were not exempt and made a back pay award. He ordered Burger King to comply with the overtime provisions of the FLSA as to all such employees in defendant's New York region and to keep records as to their allocation of work time between production and managerial tasks. Judge Sifton also found that Assistant Managers earning $250 or more were exempt under § 213(a)(1) from the FLSA overtime provisions. Burger King appeals from the back pay award and injunction, while the Secretary appeals from the determination that Assistant Managers earning $250 per week are exempt. We affirm.
 
 The Secretary's Regulations
 
 5
 This case turns upon the meaning and application of regulations promulgated by the Secretary of Labor under 29 U.S.C. § 213(a)(1),[1] which define which employees are bona fide executives. Employees earning less than $250 per week must satisfy the so-called "long test" criteria of 29 C.F.R. § 541.1 (1981)[2]: their "primary duty" must be management, id. § 541.1(a); they must regularly direct the work of two or more other employees, id. § 541.1(b); they must have "authority to hire and fire" or have their personnel recommendations accorded "particular weight", id. § 541.1(c); they must regularly exercise "discretionary powers", id. § 541.1(d); they must not devote more than 40% of their workweek to activities "not directly and closely related" to management, id. § 541.1(e). Employees earning $250 or more must satisfy the requirements of the so-called "short test": their "primary duty" must be management, and they must regularly direct the work of two or more other employees. Id. § 541.1(f). The regulation thus establishes different legal tests according to salary level, see Marshall v. Western Union Telegraph Co., 621 F.2d 1246, 1252 (3d Cir. 1980), employees earning less than $250 being subject to the "long test" while those earning $250 or more are governed by the "short test".
 
 The "Long Test" Assistant Managers
 
 6
 Judge Sifton found as a fact that the Burger King Assistant Managers "spent at least half of their time doing the same work as the hourly employees." Marshall v. Burger King Corp., 504 F.Supp. 404, 410 (S.D.N.Y.1980). This was a direct consequence of a deliberate corporate policy at the regional level which dictated "ideal" ratios of hourly labor to production and thereby required Assistant Managers to serve as an "extra hand" during high volume meal periods. Were the Assistant Managers to abstain from production work, more hourly employees would be needed, "thereby 'blowing payroll'-that is, spending more than the store's budgeted amount for hourly labor." Id. at 410.
 
 
 7
 Under the "long test," a finding that more than 40% of an employee's work time in one week is spent on non-exempt work is dispositive. Judge Sifton thus held the "long test" Assistant Managers subject to the FLSA.
 
 
 8
 Burger King's attack on these findings is unpersuasive. First, it argues that Assistant Managers often do two things at once, e.g., prepare a hamburger while directing an hourly employee to clean an area. This claim was fully explored in the testimony before Judge Sifton and provides no grounds for us to disturb his findings as to allocation of time between production and managerial tasks, particularly since Burger King bears the burden of proof on this issue. Corning Glass Works, Inc. v. Brennan, 417 U.S. 188, 196-197, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960).
 
 
 9
 Second, Burger King relies on an express written policy of the corporation and admonitions made during the training period at Whopper College forbidding Assistant Managers from spending in excess of 40% of their time on production tasks. The District Judge, however, rightly looked to what Burger King did rather than what it said. He found that the "ideal" ratio of hourly labor to production was inconsistent with the ostensible restrictions on Assistant Managers' doing of production work and that Burger King's district managers, knowing of the inconsistency, nevertheless continued to enforce the personnel/output ratio. Marshall v. Burger King Corp., 504 F.Supp. at 408-409. The record supports the finding as to Burger King's actual practices, in contrast to its public declarations.
 
 
 10
 As part of the judgment, Judge Sifton enjoined Burger King to pay FLSA overtime to all "long test" Assistant Managers in the New York region in weeks in which they spend in excess of 40% of their time on non-exempt work. The injunction further requires that records relating to allocation of time to non-exempt work by "long test" Assistant Managers be kept. This relief is admittedly broader than that sought by the Secretary, who asked for injunctive relief only as to five restaurants. Burger King appeals on grounds that the broader order denies it due process and is improper in light of the relief actually sought.
 
 
 11
 Burger King's claim that it was denied due process because it directed its proof solely to the five restaurants in question can be rejected out of hand. Its proof before Judge Sifton and its arguments before us emphasized generalities as to the tasks and responsibilities of Assistant Managers. Indeed, its principal defense,[3] here as well as in the District Court, was Burger King's corporate policy as expressed in written job descriptions and training courses. It was the existence of corporate policies governing these matters which led Judge Sifton to issue an injunction covering more than five stores, and Burger King cannot now claim to have had no opportunity to litigate that issue.
 
 
 12
 We agree with the Secretary's concession at argument that the injunction does not compel payment of overtime to all "long-test" Assistant Managers regardless of the percentage of time devoted to non-exempt work in a particular week. The injunction compels payment of overtime to a "long test" Assistant Manager only in weeks in which the employee spends 40% or more of his or her work time on non-exempt duties. The record-keeping provisions are auxiliary requirements to facilitate compliance with, and enforcement of, the injunction.
 
 
 13
 Burger King also argues that the relief is broader than that requested by the Secretary. As Judge Sifton pointed out, however, the evidence offered by defendant showed deliberate, contemporaneous violations in two districts which, given the degree of direct control of operations maintained by defendant, persuaded him that responsibility lay at the next level in the corporate hierarchy, the New York area office. Since Rule 54(c) expressly permits the granting of whatever relief a party is entitled to, whether demanded in the pleadings or not, we see no impropriety in the injunction granted, which was supported by the evidence. United States v. Maryland Casualty Co., 384 F.2d 303, 304 (2d Cir. 1967); F. & M. Schaefer Corp. v. Electronic Data Systems, 430 F.Supp. 988, 993 (S.D.N.Y.1977), aff'd per curiam, 614 F.2d 1286 (2d Cir. 1977).
 
 The "Short Test" Assistant Managers
 
 14
 The regulations provide a different test for employees earning at least $250 per week. Such employees are exempt if their "primary duty consists of management of the enterprise ... or of a ... subdivision thereof ... and includes the customary and regular direction of the work of two or more employees....[4] 29 C.F.R. § 541.1(f).
 
 
 15
 Because Judge Sifton denied exemption for the "long test" Assistant Managers solely on the grounds that they devote 40% of their time to non-exempt work, he had to make separate findings as to those Assistant Managers who earn $250 or more. Concluding that their "primary duty" is, in fact, managerial, he held them exempt from the Act's overtime provisions.
 
 
 16
 Since all the Assistant Managers in question do identical work, the result reached by Judge Sifton is anomalous. The anomaly, however, is a result of the Secretary's regulations, which provide a dispositive, mechanical test for employees earning less than $250, while calling for a judgmental decision in the case of higher paid employees. Because the threshold distinction made by the regulations is between salary levels rather than job responsibilities, they clearly permit differing legal conclusions in the case of employees doing identical work. Cf. Topel v. Northern Virginia Sun, Inc., 77 Lab.Cas. (CCH) P 33,274 (E.D.Va.1973), aff'd per curiam, 77 Lab.Cas. (CCH) P 33,275 (4th Cir. 1975); Wirtz v. Arcata Plywood Corp., 59 Lab.Cas. (CCH) P 32,131 (E.D.Cal.1969). While anomalous, such results are not necessarily irrational. Salary ranges and allocation of time to different tasks are relevant to whether an employee's primary duty is managerial. Where salary is low and a substantial amount of time is spent on non-exempt work, the inference that the employee is not an executive is quite strong and the savings in enforcement costs afforded by the mechanical test may offset whatever is lost in accuracy in aberrational cases. At higher salaries, no such inference can be drawn and the need to weigh and balance a range of factors is more compelling.
 
 
 17
 We agree with Judge Sifton that the "short test" Assistant Managers have, as their "primary duty," managerial responsibilities. 29 C.F.R. § 541.103[5] lists five factors to be weighed in determining an employee's primary duty: (1) time spent in the performance of managerial duties; (2) relative importance of managerial and non-managerial duties; (3) the frequency with which the employee exercises discretionary powers; (4) the employee's relative freedom from supervision; and (5) the relationship between the employee's salary and the wages paid employees doing similar non-exempt work.
 
 
 18
 As to (1), § 541.103 offers as a "rule of thumb" or "useful guide" the proposition that "primary duty" means that work which occupies over 50% of an employee's time. Judge Sifton found that Assistant Managers spend "at least half their time" on non-exempt work, but § 541.103 expressly states that "time alone ... is not the sole test" and that an employee may "nevertheless have management as his primary duty if the other pertinent factors support such a conclusion." His finding as to allocation of work time is thus not dispositive, albeit that it weighs against Burger King's position.
 
 
 19
 The other "pertinent factors," however, support that position. As to (2), for example, the record fully supports Judge Sifton's finding that the principal responsibilities of Assistant Managers, in the sense of being most important or critical to the success of the restaurant, are managerial. Many of the employees themselves so testified and it is clear that the restaurants could not operate successfully unless the managerial functions of Assistant Managers, such as determining amounts of food to be prepared, running cash checks, scheduling employees, keeping track of inventory, and assigning employees to particular jobs, were performed. For that reason, as well as the fact that much of the oversight of the operation can be carried out simultaneously with the performance of non-exempt work, we believe the principal or most important work of these employees is managerial. See Walling v. General Industries Co., 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); Wainscoat v. Reynolds Electrical & Engineering Co., Inc., 471 F.2d 1157 (9th Cir. 1973); Topel v. Northern Virginia Sun, Inc., supra; Wirtz v. Arcata Plywood Corp., supra.
 
 
 20
 Such employees also exercise discretionary powers, criterion (3). They schedule work time for employees according to estimates of business based on factors such as weather and local events and assign them to particular work stations. They have the power, which they exercise, to move employees from task to task and to see that they are performing their jobs. They represent management in dealings with employees when they are in charge of the restaurant and, while they do not exercise the power to hire and fire frequently, there are some instances thereof in the record. Given that the ten to twenty-five employees under their direction are teenagers, many on their first job, this supervision is a not insubstantial responsibility. Assistant Managers order supplies in quantities based on their judgments as to future sales and are responsible for dealing with the public. Finally, they must deal with cash or inventory irregularities.
 
 
 21
 We do not understand the Secretary to dispute the existence of these powers and responsibilities so much as to disparage them as wholly dictated by the detailed instructions issued by Burger King. We fully recognize that the economic genius of the Burger King enterprise lies in providing uniform products and service economically in many different locations and that adherence by Assistant Managers to a remarkably detailed routine is critical to commercial success. The exercise of discretion, however, even where circumscribed by prior instruction, is as critical to that success as adherence to "the book." Burger King, of course, seeks to limit likely mistakes in judgment by issuing detailed guidelines, but judgments must still be made. In the competitive, low margin circumstances of this business, the wrong number of employees, too many or too few supplies on hand, delays in service, the preparation of food which must be thrown away, or an underdirected or undersupervised work force all can make the difference between commercial success and failure.
 
 
 22
 The record also shows that for the great bulk of their working time, Assistant Managers are solely in charge of their restaurants and are the "boss" in title and in fact. We take that fact to satisfy criteria (4), the relative lack of supervision. See Walling v. General Industries Co., 330 U.S. at 549-550, 67 S.Ct. at 884-885; Phillips v. Federal Cartridge Corp., 69 F.Supp. 522 (D.Minn.1947); Kelly v. Adroit, Inc., 480 F.Supp. 392 (E.D.Tenn.1979). That the Restaurant Manager is available by phone does not detract in any substantial way from this conclusion. Being available for advice is in no sense the exercise of supervision.
 
 
 23
 Finally, the evidence in the record is that the employees doing exclusively non-exempt work were paid the minimum wage. Assistant Managers earning $250 or more were paid substantially higher wages even taking their longer hours into account. That fact satisfies criterion (5). See Topel v. Northern Virginia Sun, Inc., supra.
 
 
 24
 We conclude, therefore, that Assistant Managers satisfy all the criteria suggested by the Secretary, save (1), for determining whether an employee's "primary duty" is managerial.
 
 
 25
 It was argued before us that the Secretary's view of the meaning of his regulations and interpretive guidelines is entitled to weight. Bowles v. Seminole Rock Co., 325 U.S. 410, 413-414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). Even according it such weight, however, we are not free to apply the regulations in a way which we regard as a distortion solely because the Secretary has initiated litigation. If the Secretary believes that the underlying legislation was intended to cover employees such as Burger King's Assistant Managers, or that employees doing identical work for an employer should have identical legal status so far as overtime is concerned, he should reconsider the regulations as issued.
 
 The judgment is affirmed.[6]
 
 
 [1]
 29 U.S.C. § 213(a)(1) provides, in pertinent part, as follows:
 (a) The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to-
 (1) any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedure Act, except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities)....
 
 
 [2]
 That regulation reads:
 The term "employee employed in a bona fide executive...capacity" in section 13(a)(1) of the act (29 U.S.C. § 213(a)(1) ) shall mean any employee:
 (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
 (b) Who customarily and regularly directs the work of two or more other employees therein; and
 (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
 (d) Who customarily and regularly exercises discretionary powers; and
 (e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and
 (f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: Provided, That an employee who is compensated on a salary basis at a rate of not less than $250 per week (or $200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.
 
 
 [3]
 Burger King did introduce particularized evidence as to some of the employees involved but little reliance was placed upon it, probably because an examination of the record reveals it as not particularly persuasive
 
 
 [4]
 It is undisputed that Assistant Managers direct the work of several employees
 
 
 [5]
 Section 541.103 reads:
 A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of non-exempt work performed by the supervisor. For example, in some departments, or subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty. In the data processing field an employee who directs the day-to-day activities of a single group of programers and who performs the more complex or responsible jobs in programing will be considered to have management as his primary duty.
 
 
 [6]
 The Court of Appeals for the First Circuit recently addressed the identical issues raised in this appeal and resolved them in a similar fashion. Donovan v. Burger King Corp., 672 F.2d 221 (1st Cir. 1982)