Gladys MURRAY, on Behalf of Herself and All Others Similarly Situated, consent to become party plaintiffs: Floyd Caskey; Christine Christiansen; Allan Christiansen; Donald Scott; Roger D. Hoyt; Deborah L. Hoyt; Russell C. Renecker; Carol Renecker; Eugene A. Rutledge; Lawrence B. Taylor; Warren Kajander; Jeannette Petrimoulx; Kinney Bryant; Bettye Bryant; Carol S. Lewis; James L. Lewis; Harley Blair; Thomas Miller; Joyce Thompkins; Veralyn Blair; Sandra L. Crist, in her capacity as executrix of the estate of Kenneth L. Crist; Kenneth Crist; Rita Miller; Michael Hamilton; Anna M. Foster; Joni Bushnell; Lois Louise Phillips; Adrienne Geisenheimer; Sharon Jacoby; Bonnie Stotts; Linda M. Brown; Sandra Crist; Larry Brown; Randy Bushnell; Bobbie Cockrell; Mary T. Cope; Stanley Dixon; Thomas Foster; Edward Geisenheimer; Rae Jean Hamilton; Loren Jacoby; Donald Phillips; Joy M. Powers; Arthur Stotts; David Tompkins; Sidney Murray; Bev Caskey; Michelle Scott; Kevin Murray; Joylene Taylor; William Pohlman; Robert Pohlman; Nancy Pohlman; Robin Kajander; Tony Tompkins; Tracy Tompkins; Georgina Phillips; Tammy Moore; Bonita Dixon; Charles Brown, Plaintiffs–Appellees and Cross–Appellants,

v.

STUCKEY'S, INC. and Pet Incorporated, Defendants–Appellants and Cross–Appellees.

Nos. 90–2375, 90–2376 and 90–2897.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1991.

Decided July 25, 1991.

John B. Renick, St. Louis, Mo., argued (Gene R. LaSuer, Des Moines, Iowa, on brief), for defendants-appellants and cross-appellees.

P.L. Nyman, argued (Steven C. Kohl, on brief), Sioux City, Iowa, for plaintiffs-appellees and cross-appellants.

Before BOWMAN, MAGILL and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

Stuckey's, Inc. and its parent, Pet, Incorporated ("Stuckey's"), appeal from the district court's judgment after a bench trial awarding more than $900,000 in compensatory and liquidated damages and $142,000 in attorneys' fees to forty-five of its former store managers and hourly employees for violations of the maximum hours (overtime) requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Stuckey's argues that the district court erred in rejecting Stuckey's defense that the store managers were exempt executive employees, in concluding that Stuckey's violations were willful for statute of limitations purposes, in awarding liquidated damages, in failing to require adequate proof of com-

pensatory damages by each plaintiff, and in its award of attorneys' fees. Plaintiffs have cross-appealed challenging the district court's calculation of the store managers' compensatory damages and the attorneys' fee award. For the reasons discussed below, we affirm the damage awards to the hourly employees, reverse the district court's resolution of the executive exemption issue, and remand to the district court for further proceedings.

### I. Facts and Proceedings Below

During 1982–1985, the period at issue in this proceeding, Stuckey's operated roadside stores along interstate and other major highways across the United States. These stores were combination gasoline stations, convenience stores, and restaurants. Pet had acquired Stuckey's, Inc. just prior to 1982 and was attempting to reverse its lack of competitive success in the 1970's. The attempted turn-around failed, and Stuckey's stores were closed sometime after 1985.

Each Stuckey's store had an on-site store manager responsible for its day-to-day operations. Where possible, Stuckey's hired married couples who were required to live on the premises. One spouse was hired as the store manager and received compensation on a salary basis, with the opportunity for a profit-oriented bonus; the other worked as an hourly employee, typically at or near the minimum wage. Each store manager reported to a regional manager who was responsible for 10 to 20 stores. Regional managers visited their various stores periodically and communicated with the store managers by telephone on at least a weekly basis.

In addition to managing the store's day-to-day operations, each store manager was responsible for hiring sufficient additional workers to staff the store in accordance with a labor budget furnished by Stuckey's. Stuckey's based these labor budgets on the projected volume of business in each store, which varied seasonally as well as from store to store. In these budgets, the manager was scheduled to work 60 hours per week, and his or her spouse was scheduled to work 40, or in some cases 44 hours per week.

Plaintiffs Sidney and Gladys Murray filed this action alleging that Stuckey's unlawfully failed to compensate them for the overtime that each of them worked at Stuckey's stores in Randall and Little Sioux, Iowa. Pursuant to 29 U.S.C. § 216(b), the other, similarly situated plaintiffs filed written consents and became additional parties. During the lengthy court trial, numerous plaintiffs' witnesses testified that Stuckey's labor budgets were unrealistic, so that store managers and their spouses in fact worked many additional unpaid hours "off the clock." The store manager plaintiffs testified that they were required to work as many as 120 hours per week, so that they received less than the minimum wage, in order to meet Stuckey's stated requirement that they work "as long as it took to get the job done." The hourly employee spouses testified that they worked far more than the 40 or 44 hours for which they were scheduled and paid, and that Stuckey's regional managers refused to allow them to work paid overtime and in fact knew that these plaintiffs were working many unpaid hours to help their manager spouses "get the job done."

Stuckey's defended its practices as lawful under the FLSA. Stuckey's presented evidence intended to show that its store managers were executive employees for FLSA purposes and thus were not subject to FLSA's minimum wage and overtime requirements. In addition, numerous Stuckey's witnesses testified that the schedules were reasonable, that hourly employees were properly paid for all recorded hours, and that plaintiffs' claims of additional hours worked were grossly exaggerated. Stuckey's supervisory witnesses denied any knowledge that managers' spouses had in fact worked unpaid overtime.

After trial, the district court initially determined that the plaintiff store managers had worked more than their scheduled 60 hours per week, and that they were not exempt executives and therefore were entitled to FLSA overtime compensation for all hours worked over 40 per week. The court

found that the hourly paid plaintiffs had worked substantial unpaid overtime, and that Stuckey's had discouraged these plaintiffs from reporting overtime hours and therefore knew or should have known of the overtime violations. Having concluded that Stuckey's violations were willful, the court held that the three year statute of limitations applied and that Stuckey's was liable to each plaintiff for liquidated damages in an amount equal to the compensatory damages (the amount of the unpaid overtime).

Following further factual submissions and argument concerning the amount of damages, the district court entered two additional orders, first determining the maximum number of unpaid overtime hours worked by each group of plaintiffs, and then fixing a specific amount of damages for each plaintiff and the attorneys' fees to be awarded in favor of all plaintiffs. This appeal followed.

## II. The Store Managers

■ Stuckey's store managers were paid a flat weekly salary, were scheduled to work a 60–hour week, and were told to work for as long as it took to "get the job done." The district court determined that this compensation arrangement was inconsistent with the FLSA's core requirement that covered employees be paid 1½ times their regular rate for hours worked in excess of 40 per week.[1] Stuckey's principal argument on appeal is that the evidence established that the store managers were "bona fide executive" employees and were therefore exempt from FLSA's overtime requirements under Section 13(a)(1) of the Act, 29 U.S.C. § 213(a)(1).

Section 13(a)(1) expressly provides that the term "bona fide executive" shall be "defined and delimited from time to time

by regulations of the Secretary" of Labor. The Secretary's regulations provide a complicated definition of an "executive employee." To establish that an employee is an exempt executive, the employer must show that the employee:

— is one whose "primary duty" consists of the management of a recognized subdivision of the employer's enterprise;

— "regularly directs the work of two or more other employees";

— "has the authority to hire or fire other employees" or makes recommendations as to hiring, firing, and promoting that are "given particular weight";

— "regularly exercises discretionary powers"; and

— devotes less than 40 percent of the work week to nonexempt activities *or* "is in sole charge of ... a physically separated branch establishment."

29 C.F.R. § 541.1. This regulation is further complicated by a provision that employees who earn more than $250 per week need satisfy only the first two of the above requirements (the so-called "short test"), whereas employees who earn less than $250 per week must satisfy all five (the "long test"). Since some of Stuckey's store managers fell into each earnings category during portions of the damage period, both the short test and the long test are at issue in this case.

*Primary Duty.* Much of the evidence at trial addressed Stuckey's contention that the plaintiff store managers' work satisfied the "primary duty" prong of the executive employee definition. Seeking to demean or minimize the importance of the manager's position, the plaintiff managers testified that most of their time was spent on rou-

---

1. The district court then converted this determination into damage awards in its later post-trial rulings. First, it held: "The hourly rate shall be determined by dividing the weekly rate by sixty (60) for managers.... Managers shall receive one half of the hourly wage in overtime pay for each of the 20 hours from 40 to 60 that they worked each week. They shall receive one and one half times the hourly wage for each hour over 60 worked each week. The maximum

hours per week to be allowed in figuring overtime for managers is 70 for each week from October 1 to May 1 and 77 for each week from May 1 to October 1." Specific damages were then awarded to each store manager plaintiff in the third post-trial order of July 14, 1990. Given our resolution of the executive exemption issue, we need not consider Stuckey's challenge to these damage awards.

tine non-management jobs such as pumping gas, mowing the grass, waiting on customers and stocking shelves; that the manager's duties could be and were regularly handled by the manager's hourly-paid spouse; and that all decisions of real importance were made by Stuckey's regional managers to whom the store managers regularly reported. On the other hand, Stuckey's witnesses testified that the store managers were in charge of the day-to-day store operations, which encompassed the hiring and firing of other store employees, as well as numerous other discretionary management functions such as training and supervising store employees, ordering merchandise, handling customer complaints, and safe-guarding cash receipts.

The district court resolved this crucial issue in favor of plaintiffs, concluding that Stuckey's had failed to establish that the store managers' primary duty was management for three reasons—because the managers spent 65–90 percent of their time performing non-managerial duties, because "there were little, if any, differences in the duties of managers and their spouse hourly employees," and because "Stuckey's regional managers served as the 'real managers' of their stores." We disagree with this interpretation of the regulations.

The Secretary's regulations specifically define the primary duty concept: 29 C.F.R. § 541.103 provides that the primary duty determination "must be based on all the facts in a particular case" and that the amount of time spent on managerial duties is a relevant, but not dispositive, factor:

> In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

The district court's finding that the managers spent 65–90 percent of their time on non-managerial duties, though imprecise and unexplained, is relevant and not clearly erroneous. However, it is not a controlling factor under the regulations. As the court said in *Donovan v. Burger King Corp.*, 672 F.2d 221, 227 (1st Cir.1982), "the person 'in charge' of a store has management as his primary duty, even though he spends the majority of his time on non-exempt work and makes few significant decisions."

The district court's second reason, that the managers and their spouses shared their duties, is in our view irrelevant to the primary duty inquiry. It is undisputed that Stuckey's only designated one employee at each store to be the manager and only seeks an executive exemption for that one designated employee. The question is whether that person, who was in charge of the day-to-day operations of an isolated gasoline station, convenience store and restaurant, had management as his or her primary duty. It is irrelevant to that question whether the manager delegated some discretionary duties, or whether other employees who reported to the manager were capable of performing part or even all of the manager's duties. The employer is still entitled under the FLSA and the regulations to have one designated exempt executive at this type of facility.[2] *See Tipple v.*

---

**2.** The Secretary's regulations specifically warn that an employer may not expand the number of exempt supervisors beyond the amount of managerial work required. *See* 29 C.F.R. § 541.105(d). Significantly, the regulations do not provide, conversely, that an employee whose primary duty is managerial will not qualify for exempt executive status because other, non-supervisory employees are able to and sometimes do perform his or her managerial duties.

*Affordable Inns, Inc.,* 24 Wage & Hour Cas. 975 (BNA), 1980 WL 18784 (W.D.Okla. 1980) (spouses were hired as "co-managers" of employer's motels; manager's duties included "complete operation of the office"; held, one spouse an exempt executive, the other entitled to FLSA damages for unpaid overtime). Thus, the district court erred in relying upon this factor.

We also conclude that the district court misinterpreted the Secretary's primary duty regulation in relying upon its third reason, that the regional managers were the "real managers" of Stuckey's stores. Section 541.102 of the regulations explains what types of work are exempt managerial duties. The record is clear that the store managers performed, at the local level on a day-to-day basis, the types of management tasks described in § 541.102(b). It is true that Stuckey's manufactured candy and purchased gasoline for its stores on a national basis and, like most modern retail chains, prescribed and standardized many aspects of store operations. It is also true that the regional managers actively supervised the store managers, traveling to each store from time to time and communicating by phone with store managers at least weekly to monitor compliance with Stuckey's standardized methods of operation. However, we do not believe that the local store manager's job is any less managerial for FLSA purposes simply because he or she has an active regional manager boss. Like other courts that have considered the question, we believe that the manager of a local store in a modern multi-store organization has management as his or her primary duty even though the discretion usually associated with management may be limited by the company's desire for standardization and uniformity.

In *Donovan v. Burger King Corp.,* 675 F.2d 516, 521 (2d Cir.1982), the court concluded that the primary duty of Burger King Assistant Managers was managerial, noting that "the restaurants could not operate successfully unless the managerial functions of Assistant Managers, such as determining amounts of food to be prepared, running cash checks, scheduling employees, keeping track of inventory, and assigning employees to particular jobs, were performed." Rejecting the Secretary's argument that all these duties were dictated by Burger King's detailed instructions, the court observed:

> We fully recognize that the economic genius of the Burger King enterprise lies in providing uniform products and service economically in many different locations and that adherence by Assistant Managers to a remarkably detailed routine is critical to commercial success. The exercise of discretion, however, even where circumscribed by prior instruction, is as critical to that success as adherence to "the book."

675 F.2d at 521–522. Under the Secretary's regulations as construed in *Burger King,* the primary duty of a local store manager is no less managerial because the store manager reports to a distant regional manager whose primary duty is to manage multiple stores at a higher level within the organization. As the court said in *Donovan v. Waffle House, Inc.,* 26 Wage & Hour Cas. (BNA) 868, 874, 1983 WL 2108 (N.D.Ga.1983), "The mere fact that a superior comes in for a one- or two-day visit does not destroy the inferior's sole charge status if during the intervals when the superior is absent the inferior manager makes the decisions normally made by an executive in charge of an establishment." *See also Marshall v. Sally Beauty Co.,* 25 Wage & Hour Cas. (BNA) 672, 1982 WL 2184 (E.D.La.1982).

Having concluded that the district court erred in construing the primary duty factor, we turn again to § 541.103 of the Secretary's regulations, which provides in part:

> [I]n some departments, or subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, autho-

rizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty.

In this case, it is undisputed that the plaintiff store managers were the on-site employees ultimately responsible for the stores' operations, even though their discretion was circumscribed. Thus, their responsibilities placed them squarely within the dictates of the above regulation, as construed by *Burger King* and other decisions dealing with comparable multi-store operations. Accordingly, we conclude that the district court erred in ruling that Stuckey's failed to prove that the plaintiff store managers' primary duty was management for purposes of the first part of the "bona fide executive" test, 29 C.F.R. § 541.1(a).

■ *Two or More Employees.* To qualify for the executive exemption, Stuckey's also must prove that each store manager regularly supervised two or more employees. The district court did not reach this issue. The evidence included Stuckey's labor budget documents, which appear to reflect that all Stuckey's store managers supervised the equivalent of at least two other full-time employees at all times. Since the district court concluded that these labor budgets understated the labor needed to run the stores, it seems likely that Stuckey's met its burden of proof as to this factor. However, this was a contested issue at trial, and it appears that the district court deferred rulings on the admissibility of other evidence Stuckey's submitted on the question. Under these circumstances, it would be inappropriate for us to resolve this issue in the first instance. Accordingly, it is remanded to the district court for further consideration.

*Other "Long Test" Factors.* For store managers earning less than $250 per week, Stuckey's must also satisfy three other criteria to establish the § 13(a)(1) executive exemption. Two of these criteria, relating to authority to hire and fire and to the exercise of discretionary powers, were not addressed by the district court. Although the record seems clear that store managers

had the authority to hire and fire other employees, and that they were "normally and recurrently … called upon to exercise … discretionary powers in the day-to-day performance of [their] duties," 29 C.F.R. § 541.107(b), we again will remand to the district court for initial consideration of these issues.

■ The final criterion requires that Stuckey's prove either that its store managers spent more than 60 percent of their work time on managerial duties, which the district court found they did not, or that each manager was "in sole charge of … a physically separated branch establishment," 29 C.F.R. § 541.1(e). The district court concluded that the sole charge exception was not applicable "based upon the same reasoning as set forth in the court's analysis of the primary duties exception."

As defined in the regulations, the sole charge exception seems to be written for employees like these store managers. The branch being managed "must have a fixed location and must be geographically separated from other company property," 29 C.F.R. § 541.113(b). Only one person may qualify as being in sole charge of the branch establishment, but the exemption is not lost "because of an occasional visit to the branch office of the superior of the person in charge," 29 C.F.R. § 541.113(d). In order to qualify, "the employee must ordinarily be in charge of all the company activities at the location where he is employed," 29 C.F.R. § 541.113(e).

It is clear that Stuckey's store managers satisfy these sole charge standards. The store managers were ultimately in charge of all operations on the premises. The extent of their control may have been circumscribed by Stuckey's standardized methods of operation and by the supervision of the regional managers, but this typical organizational characteristic of a modern retail chain does not change the fact that the store managers were, in a very real economic sense, in "sole charge" of the local store operations. As the court said in *Waffle House, supra,* 26 Wage & Hour Cas. (BNA) at 875, "A person who, by the decisions he alone makes with the

resources provided, can have a direct and substantial effect on sales and profits is in the economic sense in sole control of a profit center." Accordingly, the district court erred in determining that the store managers who earned less than $250 per week were not in sole charge of their stores for FLSA purposes.

### III. The Hourly Employees

■ As to the hourly employee plaintiffs, the district court found that these employees worked substantial unpaid overtime hours with the knowledge of Stuckey's regional managers who "pressured [plaintiffs] into falsifying hours of work as it pertained to overtime." Based upon these findings, the district court concluded that these plaintiffs were not limited to the overtime reflected on Stuckey's falsified records and that Stuckey's had the burden of proof as to the number of hours actually worked under *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). On appeal, Stuckey's does not contest liability to these plaintiffs but argues that the district court misapplied *Mount Clemens* in awarding damages.

The district court's finding that these plaintiffs were pressured into not recording overtime hours worked is not clearly erroneous. Despite this proof that its overtime records were unreliable, Stuckey's contends that the district court erred in shifting the burden of proof as to hours worked (damages) because plaintiffs' evidence failed to show, *for each individual plaintiff,* "that he has in fact performed work for which he was improperly compensated and ... the amount and extent of that work as a matter of just and reasonable inference," *Mount Clemens*, 328 U.S. at 687, 66 S.Ct. at 1192. Stuckey's argues that this is not a case where "pattern or practice" damage evidence is sufficient because each plaintiff's situation was different. In addition, since at least some of plaintiffs' individual estimates of hours worked were obviously rejected by the district court, that court's failure to provide individualized findings and analysis as to the unpaid overtime hours worked by each

plaintiff requires that the damage awards be reversed.

We agree with Stuckey's that *Mount Clemens* requires the plaintiff in a falsified records case to present a prima facie case as to the unpaid overtime hours worked before the burden of proof shifts to the defendant. We also agree that this burden must be met individually by each plaintiff in a case such as this where differing work situations make pattern evidence unpersuasive. Although the district court failed to articulate this portion of the *Mount Clemens* standard in its memoranda, we conclude that Stuckey's has not demonstrated on the record before us that the district court erred in its specific awards to the hourly employee plaintiffs.

In its initial decision following trial, the district court included the following finding:

42. The parties have advised the court during trial that, in the event that the court holds in favor of the plaintiffs, they believe they can agree upon a calculation of the amounts due each plaintiff.... The court ... does not have an adequate record before it concerning the precise damages sustained by each plaintiff. Therefore, if the parties cannot reach a mutual agreement as to damages, the court will consider the damages sustained herein in light of legal precedents hereinafter set out, including the possibility of taking additional testimony.

In its second post-trial order, the district court established "the maximum hours per week to be allowed in figuring overtime" for hourly paid plaintiffs. Then, in its third order, which awarded specific dollar amounts to the eighteen plaintiffs in this category, the district court explained that plaintiffs had filed damage calculations for these plaintiffs and that Stuckey's had filed responses in which it agreed with plaintiffs' calculation of the total amounts to be awarded to sixteen plaintiffs but contested plaintiffs' damage calculations for the other two. The district court then specifically addressed Stuckey's arguments before making awards to those two plaintiffs.

■ On appeal, Stuckey's does not attack the specific damage calculations submitted by plaintiffs, and does not contest the district court's statement that Stuckey's agreed with those damage calculations. Moreover, Stuckey's did not include in the appeal record those portions of the trial record that would reflect how the unpaid overtime hours worked were calculated.[3] We find no plain error in the procedure employed by the district court to resolve damages issues. Stuckey's apparently waived its objections to the specific damage awards in the trial court; in any event, the record on appeal does not permit us to conclude that the evidence was insufficient to support those specific awards. Accordingly the judgment is affirmed with respect to the hourly employees.

### IV. Willful Violations and Liquidated Damages

■ The district court held that the three year statute of limitations is applicable because Stuckey's violations were willful. *See* 29 U.S.C. § 255(a). In addition, the district court held that plaintiffs were entitled to liquidated damages under § 216(b) because Stuckey's failed to prove that the violations were "both in good faith and predicated on such reasonable grounds that it would be unfair to impose ... more than a compensatory verdict." Stuckey's does not—and could not—challenge these rulings with respect to the hourly paid plaintiffs whose damage awards we have affirmed.

Stuckey's does contend, however, that the district court failed to distinguish between the hourly paid employee violations, as to which Stuckey's only defense was it did not know they were occurring, and the store manager violations, as to which Stuckey's argues that it reasonably relied upon the executive exemption defense. We agree that, as to the store managers, willfulness and good faith must be considered in the context of the claimed executive exemption defense. However, as we have reversed and remanded for further consideration of this claimed defense, we decline to consider the willfulness and good faith issues at this time.

### V. The Cross Appeal

On their cross-appeal, plaintiffs contend that the district court erred by calculating the store managers' damages based on a 60 hour work week, rather than a 40 hour work week, and that their attorneys' fee award was inadequate. These issues are inextricably tied to the damage awards to the store manager plaintiffs, which we have remanded. Accordingly, we decline to consider the cross appeal issues at this time.

### Conclusion

The decision of the district court awarding damages to the hourly paid plaintiffs in the amounts set forth on page 6 of its order dated July 14, 1990 is affirmed. For the reasons stated above, the decision of the district court awarding damages to the store manager plaintiffs is reversed, the award of attorneys' fees to the plaintiffs is vacated, and the cause is remanded for further proceedings consistent with this opinion. Because of the nature and complexity of the issues that may arise upon remand, we leave to the discretion of the district court whether a new trial, or the receipt of additional evidence on any of these issues, may be appropriate.

---

3. The record transmitted on appeal does not contain many relevant portions of the trial record, including the pleadings that set forth the manner in which each plaintiff's damages were calculated, the trial testimony of over 40 witnesses who testified by deposition, and many trial exhibits. Rules 10(b) and 11(b) of the Federal Rules of Appellate Procedure make it clear that it is the appealing party's responsibility to ensure that relevant portions of the district court record are transmitted to the Clerk of this court. *See* 8th Cir.R. 11A, 30A. Given the crowded dockets of all the courts in this circuit, the judges of this court will seldom request the clerk of our court to request the clerk of the district court to send us relevant portions of the trial record that the parties have failed to transmit. Instead, we consider the appeal on the record as prepared by the parties, which means that relevant omissions normally work to the disadvantage of the appealing party.