**Erik GRIMES, Plaintiff,**

v.

**KINNEY SHOE CORPORATION, Defendant.**

**No. A94–016 CV (JKS).**

United States District Court, D. Alaska.

Oct. 24, 1995.

---

John E. Casperson, Faulkner, Banfield, Seattle, WA, for plaintiff.

Scott J. Nordstrand, Owens & Turner, Anchorage, AK, for defendant.

## DECISION

SINGLETON, District Judge.

Erik Grimes ("Grimes"), a former employee of Kinney Shoe Corporation ("the Company"), sues the Company alleging that he was not paid overtime compensation due him under Alaska's Wage and Hour Act, AS 23.10.050, for hours he was allowed to work "off the clock." Specifically, Grimes contends that during the two-year period he managed the Company's Sears Mall Footlocker store he worked as much as ten to fifteen hours off the clock each week for which he was not compensated. The Company disputes this claim, contending that Grimes was expressly limited to fifty hours per week for which he was compensated by the Company. Trial was held to the Court on June 14 and 15, during which Mr. Grimes testified. In addition, the parties furnished the Court depositions of other witnesses which were read before trial. At the completion of the evidence and after hearing final argument the Court took the matter under advisement and unfortunately has not been diligent in returning to it. Nevertheless, the Court is now prepared to issue this memorandum decision in the place of formal findings of fact and conclusions of law. *See* FED.R.CIV.P. 52(a).

From June 18, 1989, until May 4, 1991, Grimes was employed as the manager of the Company's Footlocker Store in the Sears Mall in Anchorage, Alaska. Grimes was paid an hourly wage and was directed not to work more than fifty hours per week.[1] While the evidence is somewhat unclear, it appears that the Company operates similar stores nationwide and in all states except Alaska managers are paid a flat salary and do not keep track of their hours. The parties seem to agree that under the comparable federal wage and hour act (29 U.S.C. §§ 201–19) Grimes would be an exempt manager. In Alaska, if managers spend more than a limited number of hours per week performing the same tasks as those they supervise they are not exempt. Grimes spent more than the minimum time selling products and therefore was required to be paid overtime.

It appears that this case grew out of an earlier lawsuit by managers of the Company's Alaskan stores in which their status as exempt employees under Alaska law was litigated. *See, e.g., McKeown v. Kinney Shoe Corp.,* 820 P.2d 1068 (Alaska 1991). The Company determined that plaintiffs were correct and that if managers actively participated in selling products they could not be treated as exempt. The Company therefore settled the litigation and determined to treat

---

1. Grimes was permitted to work and record additional hours during certain high sales volume periods of the year. Grimes alleges that even during these periods his actual hours exceeded his recorded hours.

all managers henceforth as hourly workers. In order to assure that managers in Alaska would be paid approximately what their counterparts were earning in other areas, the Company allegedly used a formula to set a local manager's hourly wage. While the evidence on this issue is vague, the following seems a reasonable statement of the formula: $40X + 10(1.5X) = Y/4.3$. In the formula, $X$ equals the hourly wage to be paid a manager, $Y$ equals the monthly salary (I assume adjusted to reflect cost of living differentials) which a counterpart manager would make in Seattle, and 4.3 is the number of weeks in a month. Therefore, $Y/4.3$ would equal the salary of an outside manager expressed as a weekly amount and the target weekly wage for an Alaska manager.[2] Assuming that a local manager would receive time and one-half for hours worked over forty, and that local managers would work approximately fifty hours per week, the formula was supposed to result in a rough equality in earnings between Alaska managers paid by the hour and managers outside who were salaried.[3] Grimes was responsible for scheduling his employees and determining what hours they would work. He sent his schedules to Alvarez in Seattle. Employees were required to keep and send to management time sheets recording their hours worked. Grimes was paid for the hours on his time sheets. The dispute in this case turns on hours Grimes testified that he worked but alleges he did not record on his time sheets or indicate on any schedules.

Grimes testified that he was told not to work more than fifty hours per week but was also told to get the job done. He interpreted this as requiring him to work off the clock in order to accomplish his goals of advancement within the Company. He reasons that his supervisors either knew or should have known that no manager could "get the job done" in fifty hours per week. Consequent-

ly, Grimes argues, he was tacitly directed by his employer to work more than fifty hours per week but not record the additional work and he should be compensated for those hours. Grimes did not keep records of his hours beyond the time sheets he testified were inaccurate. Grimes' case rests on his testimony, which rests on his memory. This testimony was corroborated in part by deposition testimony of Magnus Bradfors ("Bradfors"), who also served as a manager at a different store during Grimes' tenure at the Sears Mall store. Bradfors indicated that the Company's goals of increasing sales and keeping wages down could not be met unless a manager worked more than fifty hours per week. Bradfors also estimated that he worked between ten and fifteen hours per week off the clock. Drew Freeman also supported Grimes' testimony that managers frequently worked off the clock. In contrast, Clifford Carroll and Jeffrey Harada testified that they managed comparable stores and were able to work within the guidelines set by the Company. Carroll did indicate that he took work home and spent about one hour per week at home working on scheduling and merchandising. All the managers agreed that extra work was required during a four-week back-to-school period and a six-week Christmas season. Grimes indicates that he was authorized to work extra hours during these periods and was compensated for that time but that he in fact worked an additional ten to fifteen hours off the clock during this time as well.

Grimes was a very successful manager in some respects. He doubled sales at his store and kept his employee wage rates down. It appears that he was one of the leaders in his region in these aspects of management. Grimes was less successful with personnel. He appears to have had a very high employee turnover, and if the testimony of his de-

---

2. It is clear that this formula was merely a rule of thumb. When I questioned counsel about it, the answers were more confusing than helpful. Alvarez testified that he was "surprised" that Alaska reported hours hovered around fifty per week, but if Alaska managers wanted to be paid as much as their counterparts outside of course they would work the maximum they could.

3. The parties did not pursue the formula beyond describing it. There is testimony in which witnesses assumed for purposes of discussion that $X$ would equal $12.00 and $1.5X$ would be $18.00 in which case solving for $Y$ we would get $40(12) + 10(18) = 660 = Y/4.3$ so $Y = 4.3(660)$ or $2,838 per month. There was also testimony that Grimes earned about $13.00 per hour while managing the Sears Mall store.

tractors is credited, Grimes went through a number of assistant managers. He apparently did not like to train employees. Unlike other managers, Grimes did not feel comfortable delegating responsibility. He felt that most of the people hired to work for him were incompetent and that the few competent employees were lured away to other stores through promotion.

The Company relies primarily on a summary of a computer print out to discredit Grimes' testimony. *See* Exhibit 14. The cash register at the store was a computer which kept records of sales and other transactions by indicating the employee making the sale and was intended to indicate opening and closing times. By comparing the computer records with Grimes' time sheets, the Company believes it has established that Grimes actually claimed and was compensated for more hours than he worked. The Company notes a 200 hour discrepancy. Grimes has various explanations for Exhibit 14. It does not account for Company meetings out of state or at locations away from the Sears Mall. It does not account for time spent auditing other stores. Finally, since Grimes was in charge of the computer, he points out that its entries do not accurately disclose what was happening in the store.

The Company corroborated its contention that Grimes was in fact paid for more work than he did by the testimony of Timothy Haworth and Dirk Hosler, two men who worked under Grimes at the Sears Mall store. Both claimed that Grimes was not punctual, was poorly organized, and did not work the long hours he claims. Hosler estimated that during their association Grimes worked only about 35 to 40 hours per week. In addition, Jeffrey Harada testified that he roomed with Grimes during a portion of the time in question and that Grimes appeared to work approximately the same hours as Harada. Harada could not confirm Grimes' testimony that he consistently worked ten to fifteen hours per week off the clock.

Grimes argues that two sources of information should have alerted his supervisor in Seattle to the fact that he was working off the clock. First, Grimes furnished his and his employees' work schedules to the supervisor, as well as sales records, which were computer transmitted. In Grimes' view, a comparison of the schedules and the sales records would show that Grimes was making sales on scheduled days off. Grimes also contends that his time sheets, when compared with the sales records, establish that he was making sales on days his time sheets indicated he was not working. While Grimes had employees he supervised during the period in question, none came forward to corroborate his testimony. In fact, as we have seen, the only employees of Grimes who testified disputed his testimony.

All of the witnesses were biased to one degree or another. Grimes, of course, has a significant stake in the outcome. Bradfors has sued the Company and clearly regrets the time he worked for it. The same appears true of Drew Freeman. Larry Alvarez was responsible for keeping the Company out of court and feels responsible for Grimes' lawsuit. Harada and Carroll still work for the Company as does Haworth. Hosler is no longer employed by the Company but it is clear he has a strong dislike for Grimes. The Court has considered all potential biases in evaluating the facts. Essentially, this case turns on the credibility of witnesses. Grimes' testimony was significantly impeached. The Court's credibility determinations will become clear from its resolution of the factual disputes.

### Discussion

■ Grimes, a citizen of California, sues Kinney Shoe Corporation, a New York corporation, under AS 23.10.055–150 (Alaska Wage and Hour Act ("AWHA")). This Court's jurisdiction over this action is based upon diversity of citizenship. 28 U.S.C. § 1332. The AWHA is very similar to the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201–19. In fact, the state statute is based on the federal act. *Webster v. Bechtel, Inc.*, 621 P.2d 890 (Alaska 1980) (in the absence of a conflicting statute or regulation, common terms in the state and federal acts should be given a common definition); AS 23.10.145. The Alaska Department of Labor has been given broad authority to define terms in the act differently than in the federal act. *Cf.* AS 23.10.085 *with* AS 23.10.095,

interpreted in *Dresser Indus. Inc. v. Alaska Dep't of Labor*, 633 P.2d 998 (Alaska 1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982). While both the state and federal act exempt from their operations bona fide executive employees, the two acts define the term differently. For instance, 29 C.F.R. § 541.1 establishes both a long test (§ 541.1(a)–(e)) and a short test (§ 541.1(f)), and the salary a manager receives determines which test applies. *See, e.g., Murray v. Stuckley's Inc.*, 939 F.2d 614 (8th Cir.), *cert. denied*, 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992); *O'Dell v. Alyeska Pipeline Service Co.*, 856 F.2d 1452, 1453–54 (9th Cir.1988); *Donovan v. Burger King Corp.*, 675 F.2d 516, 518, 521 (2nd Cir.1982) (Donovan II); *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir.1982) (Donovan I); *Russell v. Mini–Mart, Inc.*, 711 F.Supp. 556 (D.Mont.1988); *Stein v. J.C. Penney Co.*, 557 F.Supp. 398, 404 (W.D.Tenn.1983); *Lyles v. K–Mart*, 519 F.Supp. 756 (M.D.Fla.1981); *but see Dole v. Papa Gino's of Am., Inc.*, 712 F.Supp. 1038 (D.Mass.1989) (exempting management trainees during their short term training period). In contrast, the Alaska Department of Labor has adopted only the long test. *See* 8 AAC 15.910(7); *Am. Restaurant Group d/b/a Cattle Co. Restaurant v. Clark*, 889 P.2d 595 (Alaska 1995) (*Clark*). Although Grimes, who made more than $600 per week, qualified as exempt under the short test and under federal law would not have had to meet the more stringent long test, this does not mean that he would necessarily satisfy the long test because he spent more than 20 percent of his time in sales, an activity performed by non-managerial employees. *See Donovan II*, 675 F.2d at 518–20 (long test) and 675 F.2d at 520–22 (short test). Under Alaska law, the parties are satisfied that Grimes is not a manager. *But cf. Clark*, 889 P.2d at 597–98 (holding that on comparable facts whether the employee was an exempt manager was a question of fact).

Where Alaska statutes and regulations do not require deviation from federal law, Alaska courts will consider that law in interpreting the AWHA. The Court has therefore considered decisions of the Ninth Circuit in structuring this decision because it is of the opinion that the Alaska Supreme Court would give a comparable interpretation to the AWHA and that no issue is so novel that the Alaska Supreme Court would accept certification of the issue under Alaska Rule of Appellate Procedure 407.

Grimes, though a manager, is not exempt under Alaska law. Nevertheless, because Grimes was in charge of the Sears Mall store, he had total control over record keeping. He scheduled employee hours and monitored employee time sheets to assure that they were accurate. Thus, it is difficult to apply the burden of proof in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), which presupposes that the employer will be in the best position to keep accurate records of an employee's work and should bear the risk that records will be inadequate. *See, e.g., McLaughlin v. Ho Fat Seto*, 850 F.2d 586 (9th Cir.1988). It appears that the Company did keep records regarding overtime. The issue is the adequacy of those records. In this case it appears that Grimes controlled the adequacy of the records regarding the hours he worked unless he was pressured or otherwise influenced to falsely record his hours.

■ Having thoroughly reviewed the record, the Court recognizes that this is a very close case in some respects. Alvarez knew that Grimes was ambitious and a good salesman, but a poor manager. Alvarez knew that Grimes' sales were increasing but that he was not training employees or willing to delegate work to others. Under these circumstances, it would be possible to infer that Alvarez knew or should have known that Grimes was working more hours than managers whose sales were less and who made better use of their subordinate employees. *See, e.g., Donovan v. Bel–Loc Diner, Inc.*, 780 F.2d 1113, 1116–17 (4th Cir.1985) (discusses use of pattern or practice to establish employer acquiescence in uncompensated hours); *In re Food Lion Effective Scheduling Litigation*, 861 F.Supp. 1263, 1273 (E.D.N.C.1994) (discussing a situation where the employer had an announced policy against off the clock work but instituted an "effective scheduling policy" that virtually forced employees to either risk termination

for lying about their hours or for failing to meet the established schedules). Alvarez's options were limited. It appears that Grimes, in his quest for success, would not have abided with any direction that would have limited his potential performance. Bradfors candidly conceded that he would not have obeyed instructions that would have decreased the competitiveness of his store. It is difficult to see how other record keeping beyond stationing someone to watch over Grimes would have produced accurate records. Given the substantial evidence that Grimes did not work all of the hours he claimed, evidence which I credit, how can the Court quantify any hours he worked but did not claim? Under the circumstances, I conclude that Grimes has not satisfied his initial burden of proving that "he has in fact performed work for which he was improperly compensated." It is therefore not necessary to determine whether he has "produc[ed] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference...." *Mt. Clemens*, 328 U.S. at 687, 66 S.Ct. at 1192; *McLaughlin*, 850 F.2d at 589–90; *Brock v. Seto*, 790 F.2d 1446, 1447–48 (9th Cir.1986); *see, e.g., Forrester v. Roth's I.G.A. Food Lion, Inc.*, 646 F.2d 413, 414 (9th Cir.1981) (where employee deliberately omitted hours from time sheet he is not entitled to recover unless he proves that employer knew of omission). Nor is it

necessary to consider whether the Company's rebuttal case affirmatively disproved Grimes' assertions. The record would not permit a finding that Alvarez tacitly permitted Grimes to work overtime or encouraged or pressured him to do so.[4] While the issue is close, the Court is not convinced that the nature of the work including the responsibilities placed on managers required employees to work more hours than they recorded.[5] Grimes is correct that Alvarez wished him to do tasks that he was not doing and hinted that if he did not get the job done he would be terminated, or perhaps as important to Grimes, not promoted. *But cf. In re Foodline*, 861 F.Supp. at 1276 (implying that instruction to "do whatever it takes" to meet effective scheduling would constitute acquiescence in off the clock work). It appears that Alvarez was not complaining about Grimes' hours, since he relied on Grimes to disclose those hours, but rather, he was complaining about Grimes' efficiency and work habits. He wanted Grimes to get more done in less time, not more done in more time. The Court is satisfied that Alvarez did all he could to "pressure" Grimes not to work off the clock. *See Lindow v. United States*, 738 F.2d 1057, 1064–65 (9th Cir.1984) (Canby J., concurring). Consequently, the Court does not find that the Company knew that Grimes was working off the clock, if in fact, he was.[6]

---

**4.** The Court recognizes that the employer need not direct an employee to work overtime if in fact the employee is working overtime with the employer's knowledge. *See, e.g., Lindow v. United States*, 738 F.2d 1057, 1060 (9th Cir.1984). Nor can the employer avoid paying overtime simply because the employee is inefficient and performs work after ordinary working hours that a more efficient employee would have performed within ordinary working hours. *Id.* at 1061. It appears that Grimes was inefficient and poorly utilized the employees assigned to him. If the Court were satisfied that as a result he worked significantly more than his time sheets show, he would be entitled to compensation for that additional amount.

**5.** The primary purpose of wage and hour acts is to encourage employers to distribute work among a larger number of employees rather than to work employees overtime. *Heaton v. Moore*, 43 F.3d 1176, 1181 (8th Cir.1994). There is no evidence that Grimes was prevented from hiring more employees and there exists significant evidence that he failed to train and properly delegate work to the employees he had. Under the

circumstances, it is not possible to infer that Alvarez' direction to "get the job done" necessarily implied "work off the clock." Nor is it clear that the exigencies of the manager's job necessitated work in addition to the time allowed. It is important to recognize that Grimes was compensated for up to ten overtime hours each regular week and additional overtime hours during the back to school and Christmas seasons. His time sheets reflected this overtime work. Clearly the Company understood that it would be paying its managers for more than a forty-hour week. What is not clear is that the Company knew or should have known that its managers were working significant off the clock hours.

**6.** 29 U.S.C. § 207(a) requires an employee to prove that he was "employed" for hours for which he did not receive compensation. Employ includes "to suffer or permit to work." The Ninth Circuit interprets this to mean that any hours worked with the employer's knowledge are compensable. *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981). I assume that the same interpretation would hold

Grimes seeks to supplement the record with hearsay statements of other members of the class of litigants regarding the hours they worked. Docket No. 38. The motion is opposed. Docket No. 39. While the Court would have welcomed admissible evidence regarding the hours typically worked by managers for Foot Locker, inadmissible evidence would not be helpful. The motion at **Docket No. 38** is **DENIED.**

**IT IS THEREFORE ORDERED:**

The clerk shall enter judgment dismissing this action with prejudice. The Company may recover its costs and attorney's fees.

under the Alaska counterpart to the federal act.    *See, e.g.,* AS 23.10.145.