ARLENE KING, Plaintiff v. WINDSOR CAPITAL GROUP, INC., Defendant

No. COA05-1354

(Filed 1 August 2006)

**Employer and Employee— hotel manager—manual labor—no overtime**

A manager in a hotel housekeeping services department who did manual labor when she was short-staffed nevertheless was primarily a manager, and the trial court correctly granted summary judgment against her in her action for overtime wages under the Fair Labor Standards Act.

Appeal by plaintiff from an order entered 29 June 2005 by Judge Charles P. Ginn in Buncombe County Superior Court. Heard in the Court of Appeals 12 April 2006.

*Wimer & Jobe, by Michael G. Wimer, for plaintiff-appellant.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Stephen B. Williamson, for defendant-appellee.*

JACKSON, Judge.

Arlene King ("plaintiff") appeals an order granting summary judgment in favor of Windsor Capital Group, Inc. ("defendant").

KING v. WINDSOR CAPITAL GRP., INC.

[178 N.C. App. 669 (2006)]

From June 1999 through March 2004, the Renaissance Hotel in Asheville, North Carolina employed plaintiff as Director of Services. In plaintiff's complaint, she alleged that she is entitled to overtime wages for hours worked during her employment.

Plaintiff testified in her deposition that she was hired as a manager in the housekeeping services department. Plaintiff was one of eight managers working for the general hotel manager. As Director of Services, plaintiff managed approximately twenty-five employees, including three supervisors. Plaintiff regularly worked as the manager on duty, supervising the entire hotel. Plaintiff worked approximately forty to fifty hours per week without being paid overtime wages. In addition, she testified that it was not her understanding that she would earn overtime when she was hired. Plaintiff maintained no record of the hours that she actually worked. She never had a conversation with any of the other managers about overtime wages.

As Director of Services, plaintiff managed the housekeeping, laundry, public area, and turndown service for the hotel. Plaintiff had the authority to fire employees, approve leave time, resolve guests' complaints, and handle employees' disciplinary matters. She did not, however, have the authority to hire housekeepers, although she made hiring recommendations. Plaintiff provided the general hotel manager with information regarding her department's budget needs. In addition, plaintiff, as manager, was provided an office with computer equipment with which to perform her duties. She made a weekly schedule for her supervised employees, and posted the schedule without receiving prior approval from the hotel general manager. Plaintiff did not schedule herself for manual labor or housekeeping work. Furthermore, she did not have to punch a time clock when she arrived or departed from work, although the employees she managed were required to do so. Moreover, plaintiff provided performance reviews for her staff. In addition, plaintiff completed daily time sheets for the employees she supervised, then compiled the daily time sheets into weekly time sheets.

On a daily basis, she arrived at work around 7:00 a.m. Plaintiff attended a daily meeting of her department, although her supervisors led the meeting. Occasionally, she inspected rooms after supervisors cleaned the rooms, she sent laundry personnel to clean the rooms, or she helped clean the rooms. In addition, she also performed manual labor such as making beds, inspecting and cleaning rooms, doing laundry, and completing seamstress work on an as needed basis.

Plaintiff testified that until 2001, she spent approximately fifty percent of her time performing manual labor, and between 2001 and 2004, she spent approximately eighty percent of her time performing manual labor. Defendant terminated plaintiff in March 2004.

On 30 August 2004, plaintiff filed a complaint against defendant alleging violation of payday and overtime wages under "state and/or federal overtime wage laws" and breach of contract. Defendant filed a timely answer. On 21 June 2005, defendant filed a motion for summary judgment. On 29 June 2005, after a hearing on the motion, the Honorable Charles P. Ginn entered an order granting summary judgment in favor of defendant. Plaintiff appeals to this Court.

On appeal, plaintiff argues only that the trial court erred in granting summary judgment in favor of defendant because genuine issues of material fact exist regarding whether the Fair Labor Standards Act requires that defendant pay plaintiff overtime wages. We disagree.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). The moving party bears the burden of showing that no triable issue of fact exists. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). This burden can be met by proving: (1) that an essential element of the non-moving party's claim is nonexistent; (2) that discovery indicates the non-moving party cannot produce evidence to support an essential element of his claim; or (3) that the non-moving party cannot surmount an affirmative defense which would bar the claim. *Collingwood v. G.E. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party has met its burden, the non-moving party must forecast evidence that demonstrates the existence of a *prima facie* case. *Id.*

In deciding a motion for summary judgment, a trial court must consider the evidence in the light most favorable to the non-moving party. *See Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). If there is any evidence of a genuine issue of material fact, a motion for summary judgment should be denied. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 471, 597 S.E.2d 674, 694 (2004). "On appeal, an order allowing summary judgment is reviewed *de novo*." *Id.* at 470, 597 S.E.2d at 693.

The Fair Labor Standards Act ("FLSA") requires employers to pay their employees time and a half for work over forty hours a week unless they are "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. §§ 207(a)(1), 213(a)(1) (2005). In determining whether an employee is a bona fide executive, employees must satisfy either the "long test" or the "short test." *See Donovan v. Burger King Corp.*, 675 F.2d 516, 517-18 (2d Cir. 1982).

On appeal, the parties agree that the United States Department of Labor's "short test" applies in determining whether plaintiff was exempt from overtime pay under the Fair Labor Standards Act ("FLSA") as an "executive employee." As the Fourth Circuit has explained:

An employee will be exempt under the executive exemption's short test if: (1) the employee's primary duty consists of the management of the enterprise or of a customarily recognized department or subdivision thereof; and (2) includes the customary and regular direction of the work of two or more other employees therein.

*Smith v. First Union Nat'l Bank*, 202 F.3d 234, 250 (4th Cir. 2000). *See also* 29 C.F.R. § 541.1(f) (2003) (setting out the "short test").[1] In this case, there is no dispute that plaintiff engages in the customary and regular direction of the work of two or more other employees in a customarily recognized department or subdivision of the Renaissance Hotel.

Further, the record establishes—and plaintiff does not seriously dispute—that she performed management functions. The Department of Labor states that whether a particular type of work constitutes managerial and supervisory functions is usually "easily recognized." 29 C.F.R. § 541.102(a) (2003). Falling squarely within the Department's list of types of work constituting exempt management work, 29 C.F.R. § 541.102(b) (2003), are (1) plaintiff's supervision of 25 employees and the firing, evaluating, and disciplining of those employees; (2) her work as a manager on duty for the entire hotel; (3) her interviewing and recommendation of prospective employees; and (4) her scheduling of work in her department.

---

1. Effective 23 August 2004, the regulations regarding exemptions from overtime pay were modified. Since these amendments apply only prospectively, the prior version of the regulations is applicable. *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1273 n.5 (S.D. Fla. 2004), *aff'd*, 150 Fed. Appx. 168 (2005).

**KING v. WINDSOR CAPITAL GRP., INC.**

[178 N.C. App. 669 (2006)]

The sole dispute on appeal relates to the existence of a genuine issue of material fact regarding whether plaintiff's *primary duty* as an employee consisted of carrying out these managerial tasks. The Department of Labor's regulations specify that "[a] determination of whether an employee has management as his primary duty must be based on all the facts in a particular case." 29 C.F.R. § 541.103 (2003). We are, therefore, required to apply a "totality of the circumstances" test. *See Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003) ("It is clear from this language [in 29 C.F.R. §§ 541.103, 541.206 (2003)] that primary duty is meant to be assessed by the totality of the circumstances.").

The regulations set forth five factors for determining whether management is a primary duty, although these factors appear to be non-exclusive: (1) the amount of time spent in the performance of managerial duties; (2) the relative importance of the managerial duties as compared with other types of duties; (3) the frequency with which the employee exercises discretionary powers; (4) the employee's relative freedom from supervision; and (5) the relationship between the employee's salary and the wages paid other employees for the kind of nonexempt work performed by the manager. 29 C.F.R. § 541.103 (2003). *See also Jones v. Va. Oil Co.*, 69 Fed. Appx. 633, 636-37, 2003 U.S. App. LEXIS 14676, **8-9 (4th Cir. July 23, 2003) (per curiam) (setting forth and applying the "primary duty" test to a convenience store manager who spent seventy-five to eighty percent of her time helping employees when short-staffed);[2] *Donovan v. Burger King Corp.*, 675 F.2d 516, 520-21 (2d Cir. 1982) (*Donovan I*) (noting that 29 C.F.R. § 541.103 (2003) "lists five factors to be weighed in determining an employee's primary duty").

In arguing that management was not her "primary duty," plaintiff relies almost exclusively on the first factor: the time spent on managerial duties. In doing so, she overlooks the fact that the Department of Labor's regulations stress that "[t]ime alone . . . is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion." 29 C.F.R. § 541.103 (2003). As the Fourth Circuit has explained:

---

2. Although *Jones* is an unpublished *per curiam* decision (by Judges Michael and Motz of the Fourth Circuit and Judge Beezer of the Ninth Circuit, sitting by designation), it has been relied upon by other courts as persuasive authority and provides an excellent summary of the law governing the short test for the executive exemption.

Thus, the amount of time spent on nonmanagement tasks is not dispositive, "particularly when nonmanagement duties are performed simultaneous to the supervision of employees or other management tasks and other factors support a finding that the employee's primary duty is managerial." *Horne v. Crown Central Petroleum, Inc.*, 775 F. Supp. 189, 190 (D.S.C. 1991). In other words, an employee will have management as her primary duty if while engaged in nonexempt work, the employee also "supervises other employees, directs the work of warehouse and delivery men, . . . handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require." 29 C.F.R. § 541.103.

*Jones*, 69 Fed. Appx. at 637, 2003 U.S. App. LEXIS 14675, **9-10.

Similarly, in leading decisions in this area, both the First Circuit and Second Circuit have held that a strict time division is not necessarily a valid test. As the First Circuit explained "a strict time division is somewhat misleading here: one can still be 'managing' if one is in charge, even while physically doing something else." *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982) (*Donovan II*). According to the First Circuit, a focus on the percentage of time "seems better directed at situations where the employee's management and non-management functions are more clearly severable than they are here." *Id.* The Second Circuit similarly has held that an allocation of time spent on management and non-management duties is not dispositive when "much of the oversight of the operation can be carried out simultaneously with the performance of non-exempt work." *Donovan I*, 675 F.2d at 521. *See also Scherer v. Compass Group USA, Inc.*, 340 F. Supp. 2d 942, 953 (W.D. Wis. 2004) (holding that even though the plaintiff spent seventy-five percent of his day preparing food and only twenty-five percent engaged in managerial duties, management still was his primary duty since "it is undisputed that plaintiff monitored the performance of other staff working in the kitchen during the time he spent preparing food").

Here, plaintiff's affidavit stated that she spent fifty percent to eighty percent of her time on "manual" tasks because she was short-handed. Her deposition, however, indicates that this work was not performed independently of her managerial oversight, but rather was done in conjunction with her managerial work, as was true in *Jones*, the two *Donovan* decisions, and *Scherer*. She did not schedule herself for manual labor, but rather pitched in whenever and however she deemed necessary in order to ensure that the hotel continued func-

tioning. Courts have declined to view a manager as non-exempt simply because he or she filled in for regular employees while short-staffed, even when the lack of staffing was a chronic situation. *See, e.g., Jones,* 69 Fed. Appx. at 635, 2003 U.S. App. LEXIS 14675, **3-4 (noting that the plaintiff spent seventy-five to eighty percent of her time doing basic line-worker tasks, when, due to frequent short-staffing, the store otherwise would not have been able to serve its customers); *Moore,* 352 F. Supp. 2d at 1276 (noting that the plaintiff had to perform many non-exempt functions because payroll constraints kept him from hiring more staff).

Thus, a bald statement that fifty to eighty percent of her time was spent in "manual" tasks without taking into account simultaneously performed management functions does not accurately address the time factor. *See Jones,* 69 Fed. Appx. at 637, 2003 U.S. App. LEXIS 14675, **11 ("[E]ven assuming that Jones spent the bulk of her time performing such line-worker tasks as cooking, cleaning the store, and manning the cash register, the record reflects that Jones could simultaneously perform many of her management tasks. That is, while Jones was doing line-worker tasks, she also engaged in the supervision of employees, handled customer complaints, dealt with vendors, and completed daily paperwork."); *Donovan II,* 672 F.2d at 226 ("[A]n employee can manage while performing other work, and . . . this other work does not negate the conclusion that his primary duty is management."). Accordingly, plaintiff's assertion regarding the division of her labor—disputed by defendant—is not sufficient to defeat summary judgment in light of the other factors specified by the Department of Labor, as numerous courts, addressing similar evidence, have held. *See, e.g., Smith,* 202 F.3d at 251 (employee claimed that eighty to ninety percent of her time was spent on non-management duties); *Moore,* 352 F. Supp. 2d at 1274 (surveying cases holding that even though an employee spent the majority of his or her time performing non-exempt work, management was still his or her primary duty).

Instead of applying a simple clock standard, we must, looking at all the circumstances, decide whether an issue of fact exists as to what was plaintiff's "principal" or "chief" responsibility, *Donovan II,* 672 F.2d at 226 (holding that "the more natural reading of 'primary' is 'principal' or 'chief,' not 'over one-half' [the employee's time]"). Alternatively, as one federal district court has held, "[u]nder the 'short test,' the employee's primary duty will usually be what he does that is of principal value to the employer, not the collateral

tasks that he may also perform, even if they consume more than half his time." *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 866 (N.D. Tex. 2001).

After the time factor, the second factor is the relative importance of an employee's managerial tasks as compared to her non-managerial work. With respect to this factor, courts have typically looked at the significance of the managerial tasks to the success of the business. *Jones*, 69 Fed. Appx. at 637-38, 2003 U.S. App. LEXIS 14675, **11-12. *See also Donovan I*, 675 F.2d at 521 (stating, as to the second factor, that "it is clear that the restaurants could not operate successfully unless the managerial functions of Assistant Managers . . . were performed").

While plaintiff talks in her affidavit about the need to keep rooms cleaned and laundry done so that guests may use the rooms, a review of her deposition leads to only one conclusion: the hotel could not function without plaintiff's performing her managerial responsibilities. She testified that she supervised twenty-five employees, including three mid-level supervisors, and was "in charge of the back of the house: housekeeping, public area, turndown service." She was solely responsible for scheduling the staff performing those services, for doing performance reviews of those employees, and for firing those employees when necessary. Plaintiff reported directly to the General Manager for the hotel and sometimes the controller and identified no one else who performed any aspect of her job as Director of Services. *Compare Meyer v. Worsley Cos., Inc.*, 881 F. Supp. 1014, 1020 (E.D.N.C. 1994) (noting that the plaintiff had identified other individuals who were the "real" managers of the store). Without plaintiff, the "back of the house" would have had no oversight or, phrased differently, there would have been no one steering the ship. *See Shockley v. City of Newport News*, 997 F.2d 18, 26 (4th Cir. 1993) (distinguishing "between a manager of a recognized subdivision and a mere supervisor of subordinate employees"). Further, plaintiff was one of a limited number of managers who regularly served as a manager on duty, on which occasions she supervised the entire hotel.

One cannot reasonably read this record without concluding that the hotel could not function without plaintiff's managerial role. *See Jones*, 69 Fed. Appx. at 638, 2003 U.S. App. LEXIS 14675, **12-13 (holding that a fast-food restaurant manager's managerial tasks were more important than her nonmanagerial work, even though it took up as much as seventy-five to eighty percent of her time, when "the Dairy Queen could not have operated successfully

unless Jones performed her managerial functions, such as ordering inventory, hiring, training, and scheduling employees, and completing the daily paperwork"). Plaintiff's principal value to the hotel and, indeed, the very purpose of her employment was to manage the "back of the house." It was not to make beds. *See Kastor*, 131 F. Supp. 2d at 866-67 ("Although [plaintiff] contends that he spent [ninety] percent of his time performing non-managerial tasks, that was not the purpose of his employment. [Plaintiff] was hired by [the employer] to manage the bakery department.").

The third and fourth factors—frequency of use of discretionary powers and relative freedom from supervision—are related considerations. There can be no serious dispute regarding plaintiff's exercise of discretionary powers. She testified: "I was the one that did the firing." *See* 29 C.F.R. §§ 541.1, 541.101 (2003) (providing that an executive has the authority to hire or fire employees or is also someone whose suggestions and recommendations as to the hiring or firing will be given particular weight). Discretion also was used by plaintiff in, among other areas, scheduling, performance reviews, and resolving complaints. *See Jones*, 69 Fed. Appx. at 638, 2003 U.S. App. LEXIS 14675, **14 (holding that the third and fourth factors supported exemption when the employee "had the discretion to hire, train, schedule, discipline, and fire employees" and had the discretion to handle customer complaints); *Donovan I*, 675 F.2d at 521 (holding that employees exercised discretionary powers when they scheduled work time for subordinate employees and oversaw whether the employees were performing their jobs). With respect to supervision, plaintiff has pointed to nothing more than the supervision received by any mid-level manager from the top-ranking manager. To view that level of supervision as sufficient to render a manager non-exempt would eviscerate the executive exemption.

When all of the factors on which evidence exists are considered,[3] no genuine issue of material fact exists regarding whether plaintiff's primary duty was management. *See Jones*, 69 Fed. Appx. at 639, 2003 U.S. App. LEXIS 14675, **16-17 (holding that employer had offered evidence sufficient as a matter of law to prove that plaintiff was a "bona fide" executive under the FLSA even though she testified that she spent as much as seventy-five to eighty percent of her time performing basic line-worker tasks at a restaurant). Although plaintiff

---

3. The record contains no concrete evidence regarding the final factor: the relationship between the employee's salary and the wages paid employees doing similar non-exempt work.

points to evidence that she did manual labor when she was short-handed, she still was functioning as a manager. When an employee is the exclusive manager of a major department of hotel—including twenty-two full-time employees and three full-time supervisors—and exercises such discretion as full firing and scheduling authority, then the employee qualifies as someone whose primary duty consists of the management of her department. Accordingly, the trial court properly granted defendant's motion for summary judgment.

Because we affirm summary judgment, and plaintiff failed to assign error to summary judgment on her breach of contract claim, her contract claim is deemed abandoned. *See* N.C. R. App. P., Rule 28(a) (2006) ("Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned). *See also State v. Wilson*, 289 N.C. 531, 223 S.E.2d 311 (1976).

AFFIRM.

Judges TYSON and GEER concur.