939 A.2d 716

**Joseph COLBURN, et al.**

**v.**

**DEPARTMENT OF PUBLIC SAFETY & CORRECTIONAL SERVICES.**

**No. 41, Sept. Term, 2007.**

Court of Appeals of Maryland.

Jan. 14, 2008.

**116**

Hillary Galloway Davis (Davis & Associates Law Office, P.A., Towson), on brief, for appellants.

Michele J. McDonald, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen.), on brief, for appellee.

Argued before BELL, C.J. RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER, (Retired, Specially Assigned), DALE R. CATHELL, (Retired, Specially Assigned), JJ.

GREENE, J.

We are asked in this appeal to determine whether correctional supervisors are entitled to overtime compensation under the Fair Labor Standards Act (FLSA),[1] when their employer—the Eastern Correctional Institute (ECI), a correctional facility within the Division of Corrections of the Maryland Department of Public Safety and Correctional Services (DPSCS)—required them to work overtime and perform tasks in their overtime capacity that were normally assigned to correctional officers who would receive overtime compensation if they were required to work more than forty hours per workweek.

Joseph Colburn and the thirty-nine other appellants[2] are correctional supervisors at ECI. In March 2003, appellants filed a grievance with their employer seeking overtime compensation at a rate of one and one-half times their regular hourly rate of pay for their overtime performance of non-supervisory correctional duties. Appellants claimed that in performing these duties outside their regular forty-hours-a-week schedule, they became non-exempt employees under the FLSA and were, therefore, entitled to overtime compensation at a rate of one and one-half times their regular hourly rate of pay under Md.Code (1993, 1997 Repl.Vol.), §§ 8–303 and 8–305 of the State Personnel and Pensions Article. DPSCS, instead, gave appellants straight compensatory time, on an

---

1. 29 U.S.C. § 201, *et seq.* The Act establishes minimum wage, overtime pay, and child labor standards affecting full-time and part-time employees in the United States. In addition, the Act exempts specified employees from the application of its provisions.

2. At the beginning of oral argument, counsel for appellants conceded that those correctional supervisors who served as Majors were exempt employees under the FLSA and, thereafter, limited the appeal only to those employees serving as Lieutenants or Captains.

hour-for-hour basis, for the additional hours worked. The grievance was considered by ECI's warden, a designated representative of DPSCS, and the Maryland Office of Administrative Hearings. After a hearing on the merits of the grievance, the Administrative Law Judge (ALJ) assigned to hear the case denied appellants' grievance, concluding that appellants were exempt employees for the purposes of the FLSA and, therefore, were not eligible for overtime compensation. Appellants, thereafter, filed a Petition for Judicial Review in the Circuit Court for Somerset County. The Circuit Court affirmed the decision of the ALJ. Appellants then filed a timely appeal to the Court of Special Appeals. We granted certiorari, *Colburn v. Dep't of Corrections,* 400 Md. 646, 929 A.2d 889 (2007), on our initiative, while the appeal was pending in the intermediate appellate court, in order to consider the following question: [3]

> Whether [appellants] are entitled to be compensated at the overtime rate for all hours worked in excess of 40, plus any appropriate fees and liquidated damages, for overtime hours worked?

We hold that appellants are not entitled to overtime compensation for time worked on non-supervisory activities in excess of forty hours per workweek. Therefore, we affirm the judgment of the Circuit Court.

## BACKGROUND

On February 4, 2003, the state Commissioner of Corrections issued a memorandum to all wardens within the Maryland Division of Corrections advising them to implement a staffing plan which would reduce overtime expenditures at all Maryland correctional facilities. On February 13, 2003, Robert J. Kupec, then Warden of ECI, issued a memorandum to ECI

---

3. In considering an appeal on bypass of the Court of Special Appeals, we consider only "those issues that would have been cognizable by the Court of Special Appeals." Md. Rule 8–131(b)(2); *accord Converge Servs. Group, LLC v. Curran,* 383 Md. 462, 467 n. 1, 860 A.2d 871, 874 n. 1 (2004).

staff[4] detailing ECI's Overtime Reduction Measures. The memorandum read in relevant part:

[B]y [an earlier] memorandum, I outlined specific cost saving measures that were needed to reduce overtime cost. We have now received additional saving mandates that will necessitate reducing our overtime expenditures by $127,000. With the recent military call-up of fourteen of our co-workers, this will be a challenge. The following steps will be implemented:

\*     \*     \*

2. Correctional Officer Supervisors below the rank of Major will fill Officer I, II, and III overtime posts on their assigned shifts.

3. Supervisors may volunteer to work on "other" shifts and compounds to reduce overtime cost. Shift Commanders will determine how best to utilize supervisory resources. They will also be responsible for entitlement issues, and minimum staffing levels for supervisors.

\*     \*     \*

9. Supervisors, and correctional officers who have special assignments, Trainings, ARPs, Search Team, will be available one day per week to fill overtime needs. Under the plan, correctional supervisors, including the appellants, would be required to work extra hours in posts typically staffed by non-supervisory correctional officers.[5] Correctional supervisors working overtime shifts were given

---

4. Specifically, the memorandum was issued to Assistant Wardens, Facility Administrators, Security Chiefs, Department Heads, and Shift Commanders.

5. On August 30, 2004, the Deputy Commissioner of the Division of Corrections issued a memorandum to wardens within the Maryland Division of Corrections advising them to "review the percentage of time their supervisors are working in non-exempt status," that is in posts typically assigned to non-supervisory correctional officers. Deputy Commissioner Bobby Shearin stated: "Please ensure that supervisors are not working more than 20% in nonexempt status. This standard is part of the Fair Labor Standards Act (FLSA) and must be followed."

straight compensatory time, on an hour-by-hour basis for hours worked in excess of 40 hours per workweek.

Thereafter, on or about March 3, 2003, appellants filed a grievance claiming Warden Kupec's Overtime Reduction Measures require ECI's correctional supervisors to work overtime without the required overtime rate of compensation.[6] The grievance read in relevant part:

*Issue of Employee's Grievance:*

An order from Warden Kupec dated February 13, 2003, requires that Grievants, Lieutenants, Captains and Majors, to expend substantial portion of the work week performing non-exempt work, e.g. manning standard correctional posts, traditionally manned by non-exempt personnel. The specific reason for this is to reduce overtime costs through the use of exempt personnel to do work of non-exempt employees. Grievants may be required to work an excess of 40 hours per week and are to be paid for only 40 hours per week under current orders from the Warden. Grievants could be denied leave or drafted to work as a result of staffing shortages.

Grievants will be required to do these duties for the indefinite future.

Grievants conten[d] that their current duties under the order of February 13, 2003, and their duties prior to that date demonstrate that they are and have been non-exempt employees under Federal and State Wage and Hour laws.

Grievants are being required to perform duties and responsibilities that are clearly applicable to a different class, in violation § 7–102(e) of the State Personnel and Pensions Article, Md. Annotated Code.

\* \* \*

---

6. Originally, the Appeal and Grievance Form listed forty-five correctional supervisors as the grievants (appellants and four other correctional supervisors). Soon after the grievance was filed, however, four individuals requested the removal of their names from the grievance, leaving forty-one individuals participating.

*Employee's Requested Remedy*

Overtime at one and one[-]half the normal rate for all hours in excess of 40, attorneys fees and liquidated damages per Maryland and Federal law.

Grievants be required to perform only those duties which are consistent with the duties and responsibilities of their assigned class.

On January 9, 2006, Administrative Law Judge Mary Seely Klair held an evidentiary hearing on the merits of the grievance.[7] At the start of the hearing, counsel for appellants

7.  Prior to the evidentiary hearing in January 2006, the grievance made its way through DPSCS's administrative process for grievances. On or about March 13, 2003, Warden Kupec declined to consider the grievance and waived the matter to an administrative appeals hearing, stating: "This action was taken under the direction of the Governor of the State of Maryland, therefore I am unable to make a decision at this level. I, therefore, waive this matter to the next step." Thereafter, on or about March 21, 2003, the Maryland Classified Employees Association, Inc., on behalf of appellants, requested an Appeal Hearing on the filed grievance. Donn Garvey, Jr., Manager of Employee Relations for the Division of Correctional Services, held a conference with appellants on May 16, 2003. Garvey issued a written decision denying the grievance on May 20, 2003. Garvey stated: "Appellants have not shown by a preponderance of the evidence that they have lost some item restorable through the employee grievance process caused by Management's misapplication of some policy or regulation." Notably, the "Departmental Grievance Decision" listed only 29 Correctional Supervisors as the grievants. There is no indication in Garvey's written decision or in the record as presented to this Court why twelve Correctional Officers were not included in the listing of participating grievants.

It is unclear from the record when and what specific actions were taken after Garvey's denial of the grievance. We surmise that appellants appealed the hearing officer's decision to the Department of Management and Budget, Office of Personnel Services and Benefits, Employee Relations Division, which forwarded the matter to the Office of Administrative Hearings (OAH). On or about April 2, 2004, Garvey submitted a Motion to Dismiss on behalf of ECI. Appellants submitted a written response to Garvey's motion and a hearing on the motion before an ALJ followed. On or about June 24, 2004, an ALJ granted ECI's motion to dismiss. Appellants, thereafter, filed a Petition for Judicial Review in the Circuit Court for Somerset County. By Order dated February 16, 2005, the Circuit Court remanded the case to the OAH for a hearing "on the merits of the [ ] grievance, to include the

began by noting that the number of correctional supervisors participating in the grievance had been pared down to "28 named individuals." Counsel for appellants, however, did not provide an explanation for the loss of thirteen correctional supervisors' participation in the grievance. The ALJ then heard oral argument from Counsel, received exhibits into evidence, and considered testimony from Captain Colburn and Ronald Dryden, the Security Chief at ECI. Upon conclusion of the hearing, the ALJ took the matter under advisement pending written memoranda submitted by the parties. On or about April 6, 2006, the ALJ issued a written opinion and order denying appellants' grievance. In her opinion, the ALJ made the following factual findings:

1. At all times relevant to this matter the Grievants were employed as Lieutenants, Captains, or Majors at ECI, and were exempt employees not entitled to overtime under FLSA.

2. The Grievants were required to perform duties of non-exempt correctional officers pursuant to a Modified Staffing Plan authorized by the Governor to reduce overtime expenditures.

3. All of the employees in this case earn in excess of $250.00 per week; minimum annual salary for Lieutenants is $35,660; for Captains, $38,007; and for Majors, $40,518; and are salaried employees within the meaning of FLSA.

4. Although the Grievants performed some duties normally performed by non-exempt officers; at least 50% of their time was spent performing their normal supervisory duties: managing personnel, instructing and evaluating subordinates, performing administrative tasks relative to management, preparing reports, making recommendations to improve the overall operation and safety of ECI, a recognized subdivision of the Division of Corrections; and they customarily and regularly direct the work of two or more employees.

resolution of any motions which may be appropriately brought by either party prior to a merits hearing."

5. The Grievants perform duties directly related to the operation of ECI and are essential to the management of the facility.

6. Lieutenants, Captains, and Majors exercise independent judgment and discretion in the performance of their primary supervisory duties including making judgments and recommendations regarding: proper staffing and security, changing/modifying post orders, improving the overall operation and safety of the facility, briefing/instructing subordinates, investigating employee infractions, coordinating inmate and cell searches, inspecting prison and grounds daily, and drafting institutional policy on security matters.

Thereafter, the ALJ explained the rules governing overtime compensation found in the Fair Labor Standards Act. The ALJ then applied the applicable rule-based tests to her findings of facts. First utilizing the "salary-based test," the ALJ concluded that the grievants were exempt employees because they were "salaried employees within the meaning of the FLSA." The ALJ noted:

There is no dispute that all of the employees in this case earn in excess of $250.00 per week; minimum salary for Lieutenants is $35,660; for Captains $38,007; and for Majors, $40,518.... [T]here was no evidence that those salaries are subject to, "... reduction because of variation in the quality or quantity of work performed." ... Here, there is no claim that the Grievants are subject to a policy that permits disciplinary deductions in pay.

The ALJ then applied the "Primary Duties Test" and found that

the unrefuted evidence shows that Lieutenants, Captains, and Majors spend almost all of their time managing personnel, instructing and evaluating subordinates, performing administrative tasks relative to management, preparing reports, making recommendations to improve the overall operation and safety of ECI, ... and they customarily and regularly direct the work of two or more employees.

Furthermore, the ALJ noted that while Captain Colburn "testified that the position descriptions [offered into evidence as an exhibit] are not accurate, the descriptions were offered as joint exhibits, and there was no successful refutation of the contents of the position descriptions." The ALJ then stated:

I conclude that Lieutenants, Captains, and Majors perform duties directly related to the operation of ECI and are essential to the management of the facility. Their primary duties are unquestionably, "office or non-manual work directly related to management policies or general business operations" of ECI. . . . The duties of Lieutenants, Captains, and Majors are not only of substantial importance to the management or operation of ECI but [also] critical to it, and easily satisfy the criteria for the executive exemption from overtime.

Last, the ALJ applied the "Discretion and Independent Judgment Test." The ALJ stated in relevant part:

It is apparent from the testimony and job description that the primary tasks of Lieutenants, Captains, and Majors necessitate the exercise of [independent] judgment and discretion. It is undisputed that these primary tasks include making judgments and recommendations regarding: proper staffing and security, changing/modifying post orders, improving the overall operation and safety of the facility, briefing/instructing subordinates, investigating employee infractions, coordinating inmate and cell searches, inspecting prison and grounds daily, and drafting institution policy on security matters. The fact that some recommendations are subject to review by superior officers is no bar to application of the executive exemption. I conclude that . . . the Grievants' responsibilities . . . satisfy the criteria for executive exemption from overtime.

Therefore, the ALJ concluded that "as a matter of law[,] the Grievants failed to sustain their burden of proving that [ECI]'s refusal to pay overtime to exempt employees was a misinterpretation or misapplication of any policy or regulation over which [ECI] has control."

Unsatisfied with the ALJ's decision, forty correctional supervisors filed a Petition for Judicial Review in the Circuit Court for Somerset County on May 8, 2006.[8] A hearing on the petition was held on December 15, 2006, at which time the Circuit Court affirmed the decision of the ALJ. The Circuit Court stated:

The standard of review for the court in an appeal from an administrative decision, which this is, is whether there is substantial evidence in the record to support the findings and conclusions of Judge Klair and whether or not the decision is premised on an erroneous conclusion of law.

The issue to be decided by Judge Klair basically—there was no dispute on the underlying law that was applicable to the case. And the issues Judge Klair had to decide was [sic] whether applying the short test as set forth in the regulations, federal regulations is whether the grievants were exempt employees under the Fair Labor Standards Act. And under the short test the employees to be exempt must be salaried employees and their primary duties must have included the exercise of discretion and independent judgment. It consists of the performance of office or non-manual work directly related to management policies.

In resolving these issues, the administrative judge Klair made six specific findings of fact. She specifically found the employees were paid a set salary, an annual salary was established for the office of lieutenant, captain, and major. Those salaries being in excess of two hundred and fifty dollars per week. They were paid a set salary. It was true that the set salary could be reduced for time that the employee did not work, if there was no leave time available or not used, but the court does not believe that meeting the requirements of public accountability by reducing the salary

---

8. Appellants provide this Court with no explanation why the number of correctional supervisors has differed in the various stages of this grievance/appeal. At the administrative hearing before the ALJ, there were twenty-eight correctional supervisors participating in the grievance. When appellants filed their complaint filed in the circuit court, they listed forty individuals as participants.

for time not worked makes the income to the grievants nonsalaried. I think they are salaried employees. I agree with the inferences draw by Judge Klair in arriving at that decision and the fact that they are subject to the same disciplinary actions as other state employees and there could be a deduction of income as a result of a suspension does not destroy the salary that is paid to these grievants. As to the primary duties of the grievants, Judge Klair found that they spend more than fifty percent of their time performing exempt duties. They exercised discretion and independent judgment. They supervised two or more employees. She found as a fact that their duties were set out in their position descriptions and class descriptions and that they primarily performed supervisory and management duties.

From a review of the record these findings were supported by substantial evidence and certainly the court believes that reasoning minds could have reached the same conclusions as Judge Klair did in this case. Therefore, the Court is going to affirm the decision of the administrative judge.

The written order affirming the decision of the ALJ was filed on January 8, 2007. This appeal ensued.

### DISCUSSION

### I.

### A.

■ " 'We review an administrative agency's decision under the same statutory standards as does the Circuit Court.' " *Kane v. Board of Appeals of Prince George's County,* 390 Md. 145, 159, 887 A.2d 1060, 1068 (2005) (quoting *Annapolis Market Place, L.L.C. v. Parker,* 369 Md. 689, 703, 802 A.2d 1029, 1037 (2002)). Judge Eldridge, writing for this Court in *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376, 380 (1999), explicated the standard of review for administrative agency decisions:

A court's role in reviewing an administrative agency adjudicatory decision is narrow, it is limited to determining if

there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

(Internal quotations and citations omitted). *Accord Maryland Aviation Administration v. Noland,* 386 Md. 556, 571–74, 873 A.2d 1145, 1154–56 (2005).

We review the agency's factual findings using the substantial evidence test. *Banks,* 354 Md. at 67, 729 A.2d at 380. In applying this test, we ask, after reviewing the evidence in a light most favorable to the administrative agency, "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Id.* at 68, 729 A.2d at 380 (internal quotation omitted). We treat "the agency's decision [a]s prima facie correct and presumed valid." *Id.,* 729 A.2d at 381. It is the agency's province, not ours, to resolve conflicting evidence and to draw inferences from that evidence. *Id.*

With regard to legal issues before the administrative agency, we addressed the deference afforded to administrative agencies in *Schwartz v. Maryland Dep't of Natural Resources,* 385 Md. 534, 554, 870 A.2d 168, 180 (2005):

With respect to an agency's conclusions of law, we have often stated that a court reviews *de novo* for correctness. We frequently give weight to an agency's experience in interpretation of a statute that it administers, but it is always within our prerogative to determine whether an agency's conclusions of law are correct, and to remedy them if wrong.

(Citation omitted.)

Furthermore, decisions of the Office of Administrative Hearings (OAH) are subject to review under the Administrative Procedure Act (APA), Md.Code (1984, 2004 Repl.Vol.), § 10–222 of the State Government Article.[9]

---

**9.** Subsection (h) provides, in pertinent part, that the reviewing court may:

## B.

The statutory provisions that are the focus of this dispute are found in Title 8 of the State Personnel and Pensions Article. Appellants claim they are due overtime compensation under § 8–303. This section, entitled "Compensation for overtime work," reads as follows:

(a) Except as otherwise provided in this subtitle, an employee who works more than the normal workweek for that employee's unit is entitled to compensation for that overtime work in the form of:

(1) payment as provided in § 8–305 of this subtitle; or

(2) compensatory time as provided in § 8–307 of this subtitle.

(b) The Secretary shall adopt regulations to prevent:

(1) the granting of unnecessary overtime; and

(2) the failure to grant overtime compensation to an eligible employee.

Section 8–305(a), entitled "Work period," mandates the rate of payment for work performed outside the employee's normal workweek. It provides:

(a) Except as otherwise provided in this section:

(1) payment for time worked in excess of an employee's normal workweek but not in excess of 40 hours in that workweek shall be made at the employee's regular hourly rate of pay; and

---

(1) remand the case for further proceedings;
(2) affirm the final decision; or
(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:
i.   is unconstitutional;
ii.   exceeds the statutory authority or jurisdiction of the final decision maker;
iii.   results from an unlawful procedure
iv.   is affected by any other error of law;
v.   is supported by competent, material, and substantial evidence in light of the entire record as submitted; or
vi.   is arbitrary or capricious.

(2) payment for time worked in excess of 40 hours in a workweek shall be made at one and one-half times the employee's regular hourly rate of pay.

Most pertinent to the instant appeal, § 8–302 makes clear that our construction, reading, and application of §§ 8–303 and 8–305 in the case *sub judice* shall be "to the extent applicable, in accordance with the federal Fair Labor Standards Act."

## II.

Appellants contend that they are entitled to overtime compensation at a rate of one and one-half times their regular hourly rate of pay for all hours worked in excess of forty hours per workweek because they do not qualify as exempt employees under the FLSA. Specifically, appellants argue that they are neither paid on a salary basis nor perform the requisite executive functions necessary for the exempt status. Focusing instead on the correctness of the ALJ's decision, DPSCS asserts that the ALJ did not err in concluding that appellants were exempt employees under the FLSA. Upon review of the record before this Court, we hold that the ALJ did not err in concluding that appellants are exempt employees within the meaning of FLSA and, therefore, appellants are not entitled to receive cash compensation from DPSCS.

## A.

The Fair Labor Standards Act, originally enacted in 1938, establishes, among other things, minimum wage and overtime pay standards for workers within the United States. 29 U.S.C. §§ 201, *et seq.* (2002). Congress expanded FLSA's coverage to state and local government employees in 1974. Pub.L. 93–259, § 6, 88 Stat. 58–62. *See also* 29 C.F.R. §§ 553.2(b) and 553.32(c) (1996) (expressly applicable to public-sector employees). Under its provisions, the FLSA mandates that employers must pay at least the federal minimum wage for all hours worked and, if the employer permits or requires employees to work more than forty hours per workweek, pay employees at least one and one-half times the

regular hourly rate of pay for all overtime hours performed. 29 U.S.C. §§ 206 and 207(a)(1).

The FLSA, however, provides an exemption to its minimum wage and overtime pay requirements for workers "employed as bona fide executive, administrative, or professional employees." 29 U.S.C. § 213(a)(1). In enacting the FLSA and providing this exemption, Congress did not define important phrases of the provisions, including who qualifies as a "bona fide executive, administrative, or professional employee." Instead, Congress delegated to the Secretary of Labor the responsibility of promulgating regulations defining the scope of the exemption. See 29 U.S.C. § 213(a)(1). The regulations in force at the time of the grievance provided that an employer may prove that an employee is an exempt employee by satisfying a five-part test, commonly referred to as the "long test." See 29 C.F.R. § 541.2 (2002). This test applies to employees who are paid "on a salary or fee basis at a rate of not less than $155 per week." See 29 C.F.R. § 541.2(e)(1) (2002). The regulations also provided for a second test, commonly referred to as the "short test," for those employees who are paid "on a salary or fee basis at a rate of not less than $250 per week." [10] See 29 C.F.R. § 541.2(e)(2) (2002).

It is undisputed that appellants were paid over $250 per week; [11] therefore, we shall apply the "short test" to deter-

---

**10.** In 2004, the Department of Labor modified the regulations concerning exemptions from overtime pay. For example, an exempt employee under the administrative and executive exemption must now earn at least $455 per workweek. 29 C.F.R. § 451.600 (2006). These amendments apply prospectively; hence, only the prior version of the regulations is applicable to the instant case. See *Moore v. Tractor Supply Co.,* 352 F.Supp.2d 1268, 1273 n. 5 (S.D.Fla.2004), *aff'd,* 150 Fed.Appx. 168 (2005); *King v. Windsor Capital Group, Inc.,* 178 N.C.App. 669, 632 S.E.2d 557, 560 n. 1 (2006).

**11.** Lieutenants earn between $35,660 and $54,988, while Captains earn between $38,007 and $58,596 per year, depending on experience and other factors. Thus, the minimum amount that an appellant at the rank of Lieutenant or Captain could possibly receive on a weekly basis is $685.77 and $730.90, respectively, an amount which far exceeds the $250 per week minimum set forth in 29 C.F.R. § 541.1(e)(2). In addition, both parties argued in their respective briefs that the "short

mine whether appellants fall within the bona fide administrative employee exemption.[12] Under this test, DPSCS must first prove that it paid appellants on a salary basis. 29 C.F.R. § 541.2(a)(1); *see also Donovan v. Burger King Corp.*, 675 F.2d 516, 517–18 (2d Cir.1982). In addition, DPSCS must prove that appellants meet a set of criteria concerning their job duties. For example, to be considered an exempt administrative employee, the appellants' primary duties must consists of: (1) "[t]he performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers," and (2) the performance of work "requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.2(e)(2) (2002). Likewise, an executive employee is exempt if the employee: (1) "primarily engages in management of the enterprise, department or subdivision in which the employee is employed, and (2) customarily and regularly directs or supervises two or more other employees." 29 C.F.R. § 541.1(f) (2002).

## B.

## Analysis

### 1.

### Salary

Appellants first contend that they are not exempt employees under the FLSA because they are not salaried employees. Appellants argue:

> [Appellants] have no set minimum which they receive regardless of the number of hours worked. Rather, they are paid only for hours worked or hours for which they have eligible leave available for their use. There is no predeter-

---

test" applied in the present case and never addressed the use of the "long test" in their analysis.

**12.** We shall limit our analysis to the administrative "short test," as the ALJ relied on that test to conclude that appellants are exempt employees.

mined amount of pay to which [appellants] are entitled.... If [appellants] do not work or are not otherwise on paid leave, they are not paid.

DPSCS argues that there is substantial evidence to support the ALJ's finding that appellants were salaried employees. DPSCS contends that appellants' claim that they do not receive a "predetermined amount" of compensation because they are "paid only for hours actually worked or hours for which they have eligible leave available for their use" is incorrect. DPSCS, citing to 29 C.F.R. § 541.5d(a) (2002), *Shockley v. City of Newport News*, 997 F.2d 18, 25 (4th Cir.1993) and *Demos v. City of Indianapolis*, 302 F.3d 698, 701–03 (7th Cir.2002), states:

The Department of Labor's FLSA regulations specifically provide that a public agency plan, which reduces compensation ... "pursuant to principles of public accountability," is consistent with a finding that the employee is paid on a salary basis.

■ In reviewing the record, w e hold that the ALJ did not err in concluding that appellants were employed on a salary basis. An employee is employed on a salary basis

within the meaning of the regulations *if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.* Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

29 C.F.R. § 541.118(a) (2002) (emphasis added); *see also* 29 C.F.R. § 541.212 (2002) (cross-referencing 29 C.F.R. § 541.118(a) to apply to "administrative" employees).

In the case *sub judice,* it is clear from the record as well as undisputed that appellants earn a set amount of money per year, depending on the position they hold. The record shows that Lieutenants earn between $35,660 and $54,988, while Captains earn between $38,007 and $58,596 per year. Appellants claim, however, that despite this stated yearly salary, they do not receive a predetermined set amount each pay period, as required by the federal regulations. Rather, according to their argument, appellants are paid for only those hours they actually work or have leave available for their use. Appellants' argument fails to consider two federal regulations interpreting the FLSA.

First, 29 C.F.R. § 541.118(b) specifically clarifies that an employee's salaried status will not be affected if deductions are made to his or her salary when "the employee absents himself from work for a day or more for personal reasons, other than sickness or accident."

Moreover, in 1992, in response to many government employers reducing wages of their salaried employers for unexcused absences in the name of public accountability, the Department of Labor developed a specific regulation, 29 C.F.R. § 541.5d, which permitted government employers to continue this practice without risking the overtime exemption for their salaries employees. *See Demos,* 302 F.3d at 702–03. 29 C.F.R. § 541.5d reads as follows:

(a) An employee of a public agency who otherwise meets the requirements of § 541.118 shall not be disqualified from exemption under §§ 541.1, 541.2, or 541.3 on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because—

(1) permission for its use has not been sought or has been sought and denied;

(2) accrued leave has been exhausted; or

(3) the employee chooses to use leave without pay.

(b) Deductions from the pay of an employee of a public agency for absences due to a budget-required furlough shall not disqualify the employee from being paid "on a salary basis" except in the workweek in which the furlough occurs and for which the employee's pay is accordingly reduced.

We agree with DPSCS that, under this Department of Labor regulation, deductions made to public employees' salaries, as required by the principles of public accountability, do not disqualify appellants from the overtime exemption. Therefore, the State of Maryland's practice of deducting a salaried employee's wages for unexcused absences would not automatically disqualify the employee from the FLSA overtime exemption.

Appellants also urge that the ALJ erred in finding that "there was no evidence that [appellants'] salaries are subject to, '. . . reduction because of variation in the quality or quantity of work performed.'" Appellants claim that this finding is in error because, under Md.Code (1993, 1997 Repl.Vol., 2000 Supp. Vol.), § 11–104 of the State Personnel and Pensions Article, they are subject to disciplinary suspension without pay.[13] DPSCS counters, arguing that the "possibility of a disciplinary suspension does not render an employee, who would be otherwise salaried and exempt, subject to the FLSA." Rather, DPSCS asserts that case law requires an actual practice or policy for making such deductions to disqualify an otherwise exempt employee. *See Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). In

---

**13.** DPSCS also contends that this issue was not raised below by appellants, and therefore, is not preserved for our review. In our review of the record, we find that the ALJ addressed the issue of disciplinary deductions in pay in her written opinion. Under Maryland Rule 8–131, we review those issues that have been "raised in or decided by" the lower tribunal. *See* Md. Rule 8–131. Therefore, this issue has been properly preserved for our review.

addition, DPSCS claims that § 11–104 of the State Personnel and Pensions Article "precludes an exempt employee from experiencing a disciplinary deduction in pay that would compromise the employee's FLSA-exempt status." In other words, DPSCS asserts that the State policy is that any such suspension "must be for one or more full workweek(s), so that ... the employee receives no compensation for a full week in which the employee performed no work, rather than receiving a disciplinary deduction in pay for a week during which some work is performed."

■ Under the Department of Labor regulations, a salaried employee's pay may not be "subject to reduction because of variations in the quantity or quality of the work performed." 29 C.F.R. § 541.118(a) (2002). There is, however, an exception to this rule:

> Penalties imposed in good faith for infractions of safety rules of major significance will not affect the employee's salaried status. Safety rules of major significance include only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines.

29 C.F.R. § 541.118(a)(5) (2002). We are required to narrowly construe exemptions to FLSA "in order to further Congress' goal of providing broad federal employment protection." *Abshire v. County of Kern,* 908 F.2d 483, 487 (9th Cir.1990).

■ Appellants point to § 11–104 of the State Personnel and Pensions Article as proof that they are subject to disciplinary suspension without pay. Section 11–104, entitled "Disciplinary Action permitted," reads as follows:

> An appointing authority may take the following disciplinary actions against any employee:
>
> (1) give the employee a written reprimand;
>
> (2) direct the forfeiture of up to 15 work days of the employee's accrued annual leave;
>
> (3) suspend the employee without pay;
>
> (4) deny the employee an annual pay increase;

(5)  demote the employee to a lower pay grade;  or

(6)  with prior approval of the head of the principal unit:

(i) terminate the employee's employment, without preju-dice;  or

(ii) if the appointing authority finds that the employee's actions are egregious to the extent that the employee does not merit employment in any capacity with the State, termi-nate the employee's employment, with prejudice.

Essentially, appellants contend that because § 11–104 nomi-nally subjects all State employees to a range of disciplinary sanctions, including suspension without pay, they are subject to "reduction [in pay] because of variations in the quantity or quality of the work performed," and therefore are non-exempt under FLSA. We disagree.

In *Auer v. Robbins, supra,* the United States Supreme Court was asked to review a situation similar to the one presented before this Court.  In that case, several sergeants and one lieutenant of the St. Louis Police Department sued for overtime compensation under the FLSA. *Auer,* 519 U.S. at 455, 117 S.Ct. at 908, 137 L.Ed.2d at 86.  The officers argued in that case that they were not salaried employees because they were subject to suspension without pay as a possible disciplinary action.  *Auer,* 519 U.S. at 460–63, 117 S.Ct. at 910–12, 137 L.Ed.2d at 89–91.  The Court rejected the offi-cers' argument that the possibility of a disciplinary suspension among a range of disciplinary options rendered them non-exempt employees.  *Auer,* 519 U.S. at 461, 117 S.Ct. at 911, 137 L.Ed.2d at 90.  The Court, in deferring to the Secretary of Labor's interpretation of the salary-basis test, stated:

The Secretary of Labor, in an amicus brief filed at the request of the Court, interprets the salary-basis test to deny exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay "as a prac-tical matter."  That standard is met, the Secretary says, if there is either an actual practice of making such deductions or an employment policy that creates a "significant likeli-hood" of such deductions.  The Secretary's approach rejects

a wooden requirement of actual deductions, but in their absence it requires a clear and particularized policy—one which "effectively communicates" that deductions will be made in specified circumstances. This avoids the imposition of massive and unanticipated overtime liability (including the possibility of substantial liquidated damages ...) in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not "significantly likely" to be invoked against salaried employees.

\* \* \*

The Secretary's approach is usefully illustrated by reference to this case. The policy on which petitioners rely is contained in a section of the police manual that lists a total of 58 possible rule violations and specifies the range of penalties associated with each. All department employees are nominally covered by the manual, and some of the specified penalties involve disciplinary deductions in pay. *Under the Secretary's view, that is not enough to render petitioners' pay "subject to" disciplinary deductions within the meaning of the salary-basis test.* This is so because the manual does not "effectively communicate" that pay deductions are an anticipated form of punishment for employees in petitioners' category, since it is perfectly possible to give full effect to every aspect of the manual without drawing any inference of that sort. If the statement of available penalties applied solely to petitioners, matters would be different; but since it applies both to petitioners and to employees who are unquestionably not paid on a salary basis, the expressed availability of disciplinary deductions may have reference only to the latter. No clear inference can be drawn as to the likelihood of a sanction's being applied to employees such as petitioners. Nor, under the Secretary's approach, is such a likelihood established by the one-time deduction in a sergeant's pay, under unusual circumstances.

*Auer,* 519 U.S. at 461–62, 117 S.Ct. at 911–12, 137 L.Ed.2d at 90–91 (emphasis added).

Like in *Auer*, § 11–104, the statutory provision upon which appellants in the instant case rely to support their argument that they are not salaried employees, contains a list of several possibilities for disciplinary action for an offending employee, only one of which is suspension without pay. Under the Secretary of Labor's interpretation of the salary-basis test, the mere possibility of a disciplinary suspension without a significant practice or policy of suspending correctional supervisors for disciplinary infractions "is not enough to render [appellants]' pay 'subject to' disciplinary deductions." *Auer*, 519 U.S. at 462, 117 S.Ct. at 911, 137 L.Ed.2d at 90. Just as the Supreme Court concluded with regards to the police manual at play in *Auer*, § 11–104 does not "effectively communicate" that suspension without pay is "an anticipated form of punishment for employees in [appellants'] category." *Id.* Appellants provided no evidence before the ALJ that suspension without pay had ever been utilized as a disciplinary action by DPSCS against any correctional supervisors. Indeed, it is clear that the penalties of § 11–104 do not apply solely to correction supervisors; instead, these seven disciplinary sanctions are applicable to "all employees in the State Personnel Management System within the Executive Branch." Therefore, we hold that the ALJ did not err in finding that appellants are paid on a salary basis.

### 2.

### Duties

Appellants also contend that they do not qualify for the administrative or professional employee exemption because they do not fulfill the necessary statutory criteria relating to their job duties. First, appellants claim that they do not perform managerial or executive functions as defined by the FLSA. Specifically, appellants argue that they do not carry out any functions of management; rather, in performing their assigned duties, they "carry out the planning of their superiors, and may make recommendations that are subject to and must be acted upon by the superiors." Second, appellants assert that they do not perform managerial or executive

functions under State law. Specifically, appellants argue that their positions are within the State's "Skilled Service," which, under the State Personnel and Pensions Article, is separate and distinct from the "Management Service," "Executive Service," or "Professional Service." [14] *See Md.Code* (1993, 1997 Repl.Vol.), §§ 6–401 through 6–404 of the State Personnel and Pensions Article (explaining the employment categories in the State Personnel Management System).

DPSCS counters, asserting that "the ALJ's determination that [appellants] are exempt is reasonable and supported by substantial evidence." First, DPSCS contends that overwhelming and undisputed evidence supports the administrative finding that *all* of the Supervisors "customarily and regularly direct the work of two or more employees." DPSCS points to the testimony of Captain Joseph Colburn, who testified that he directly supervised employees who served as Correctional Officers I's or II's, Sergeants, or Lieutenants. Second, DPSCS contends that the appellants' argument that their assignment to the "Skilled Service" indicates their FLSA status is "without support in law or fact." Specifically, DPSCS argues that the General Assembly did not intend for the particular service class of a state employee to indicate the employee's FLSA status; rather the particular service class assignment indicates whether an employee has a vested interest in continued employment with the State.

■ We hold that the ALJ did not err in concluding that appellants' job duties qualified them for the administrative employee overtime exemption. As we explained above, in order for an employee to qualify for the administrative employee exemption, the employer must prove that the employee's primary duty consists of: (1) "[t]he performance of office or non-manual work directly related to management policies or general business operations of his employer or his employ-

---

14. For a description regarding the composition and maintenance of the State Personnel Management System, *see Dep't of Pub. Safety and Correctional Srvs. v. Myers*, 392 Md. 589, 590–92, 898 A.2d 465, 466 (2006).

er's customers," and (2) the performance of work "requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.2(e)(2) (2002).

With regard to the first prong of the job duties test, the ALJ stated that appellants' "primary duties are unquestionably, 'office or non-manual work directly related to management policies or general business operations' of ECI." The ALJ concluded: "The duties of Lieutenants, Captains, and Majors are not only of substantial importance to the management or operation of ECI, but [also] are critical to it, and easily satisfy the criteria for the [administrative] exemption from overtime." There is substantial evidence to support these findings. The record shows that appellants were members of ECI's management team. As the ALJ pointed out in her written opinion, ECI Security Chief Ron Dryden testified that ECI's management team consists of Lieutenants, Captains, and Majors as well as the Administration (Security Chief, Assistant Warden, Warden). Security Chief Dryden also testified that the day-to-day duties of Lieutenants, Captains, and Majors were aptly described on the position descriptions submitted before the ALJ. These duties included, depending on the position: supervising other correctional employees; scheduling work rotations; conducting daily inspections of buildings and grounds; coordinating prison activities, including prisoner transfer; investigating complaints of employee misconduct; and, completing administrative reports and evaluations. Hence, we conclude that there is substantial evidence in the record to support the ALJ's reasoning and finding that the appellants' job duties concern the management and operation of ECI.

Second, there is substantial evidence in the record to support the ALJ's finding that appellants exercise discretion and independent judgment. As the ALJ mentioned in her written opinion, the duties assigned to appellants include tasks that require discretion and judgment on the part of the employee. In considering the job descriptions submitted, the ALJ noted that the duties of Lieutenants included: preparing the daily post assignment schedules; providing "specific guidance to

subordinates in the application of direct supervision" of subordinates' activities, including routine and special searches; preparing written investigative reports and employee evaluations; and, counseling subordinate employees. The ALJ also noted that the duties of Captains included: supervising subordinate employees, including lieutenants; providing guidance and direction to subordinates; investigating inmate complaints and employee misconduct; preparing shift schedules and managing employee leave; coordinating inmate searches and transfers; and recommending changes to post orders and policy directives. It is clear that duties such as these require discretion and independent judgment on the part of the employee.

Accordingly, we shall affirm the ALJ's conclusion that appellants are exempt employees under the Fair Labor Standards Act. Therefore, appellants are not entitled to overtime compensation for work performed in an overtime capacity.

**JUDGMENT OF THE CIRCUIT COURT FOR SOMERSET COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**